**STATE of Utah, Plaintiff and Appellee,**

v.

**Gregory MARSHALL, Defendant and Appellant.**

No. 890121–CA.

Court of Appeals of Utah.

April 18, 1990.

AMENDED OPINION *

BILLINGS, Judge:

The appellant, Gregory J. Marshall ("Mr. Marshall"), was charged with possession of a controlled substance with the intent to distribute for value, a second degree felony, in violation of Utah Code Ann. § 58–37–8 (1989). Mr. Marshall filed a pretrial motion to suppress the 140 pounds of marijuana seized from the rental car he was driving when he was arrested. The trial court denied Mr. Marshall's motion and he filed this interlocutory appeal. We reverse and remand for further proceedings consistent with this opinion.

We recite the facts surrounding the seizure of the contraband in detail as the legal issues presented are fact sensitive. *State v. Sierra*, 754 P.2d 972, 973 (Utah Ct.App. 1988). Utah Highway Patrol Trooper Denis Avery ("Trooper Avery") was driving on Interstate 70 near Salina, Utah. He noticed Mr. Marshall's vehicle in the left-hand lane passing a motor home. Trooper Avery observed that Mr. Marshall's turn signal remained blinking for approximately two miles after he passed the motor home. Not knowing whether Mr. Marshall's signal was malfunctioning or whether Mr. Marshall had negligently left the signal on, Trooper Avery pulled the vehicle over to inform Mr. Marshall of the problem and to give him a warning ticket. Trooper Avery had issued similar warning citations for turn signal violations approximately five to ten times in the previous six-month period.

Prior to stopping Mr. Marshall, Trooper Avery noticed the vehicle had California license plates. He approached Mr. Marshall's vehicle and informed Mr. Marshall of the turn signal problem. Mr. Marshall responded that he had been having "a hard time keeping the thing turned off."

Trooper Avery asked Mr. Marshall for his driver's license and vehicle registration. Mr. Marshall produced a New York driver's license and a California rental agreement for the vehicle. Mr. Marshall said he was

Jerold D. McPhee and Kristine K. Smith, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Christine F. Soltis, Salt Lake City, for plaintiff and appellee.

Before DAVIDSON, BILLINGS and JACKSON, JJ.

---

* This opinion issued on Petition for Rehearing replaces the opinion of the same name issued on December 26, 1989.

going skiing in Denver and planned to return the car to San Diego, California. However, the rental agreement indicated that the car would be returned in New York in five days.

Trooper Avery acknowledged he became suspicious that Mr. Marshall might be transporting drugs. Trooper Avery asked Mr. Marshall to return with him to his patrol car where he issued a warning citation for "Lights, head, tail, other." Trooper Avery then returned Mr. Marshall's driver's license and the rental agreement.

Trooper Avery next asked Mr. Marshall if he was carrying alcohol, drugs or firearms. Mr. Marshall stated he was not. Trooper Avery then asked Mr. Marshall if he could "look inside the vehicle." Mr. Marshall responded, "Go ahead." Trooper Avery and Mr. Marshall walked back to Mr. Marshall's vehicle. The passenger door was locked and Mr. Marshall reached in on the driver's side to open the door. Trooper Avery noticed a small red bag on the floor of the vehicle and asked if he could open it. Mr. Marshall agreed. No contraband was found inside the bag or the passenger compartment of the vehicle.

Trooper Avery then asked if Mr. Marshall had a key to the trunk and if Mr. Marshall would open the trunk. Mr. Marshall attempted to open the trunk, but was shaking so badly that Trooper Avery had to assist him by holding the key latch cover up while Mr. Marshall inserted the key. Trooper Avery saw four padlocked suitcases when Mr. Marshall opened the trunk. Trooper Avery asked Mr. Marshall what the suitcases contained and Mr. Marshall responded "clothes." Trooper Avery then asked if he could look in the suitcases. Mr.

Marshall immediately reversed his statement and responded that the suitcases were not his and must have already been in the trunk when he rented the vehicle. Trooper Avery testified there was some play in the zipper of one bag and he unzipped it far enough to see a green leafy substance. Trooper Avery then arrested Mr. Marshall for possession of a controlled substance.

Mr. Marshall did not testify or present any evidence to contradict Trooper Avery's testimony during the hearing below.

## STANDARD OF REVIEW

"[W]e will not disturb the trial court's factual evaluation underlying its decision to grant or deny a motion to suppress unless it is clearly erroneous." *State v. Sierra*, 754 P.2d 972, 974 (Utah Ct.App.1988). *See also State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *State v. Johnson*, 771 P.2d 326, 327 (Utah Ct.App.1989). Further, "[t]he trial court's finding is clearly erroneous only if it is against the clear weight of the evidence or if [the appellate court] reach[es] a definite and firm conviction that a mistake has been made." *State v. Sery*, 758 P.2d 935, 942 (Utah Ct.App.1988).

■ Utah Rule of Criminal Procedure 12(c) requires the trial court to state its findings on the record "[w]here factual issues are involved in determining a motion." Those findings must be sufficiently detailed in order to allow us the opportunity to adequately review the decision below.[1]

## PRETEXT STOP

Initially, Mr. Marshall contends Trooper Avery used the fact that his turn signal

---

1. Utah appellate courts have consistently required detailed findings of fact to support a judgment entered by a trial judge in civil cases. *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979) ("The importance of complete, accurate and consistent findings of fact in a case tried by a judge is essential to the resolution of dispute under the proper rule of law. To that end the findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached."); *Sampson v. Richins*, 770 P.2d 998, 1002–03 (Utah Ct.App.1989) (findings of fact must indicate the "mind of the court." (quoting *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 601 (Utah 1983)).

Detailed findings of fact likewise greatly ease the burden of an appellate court in its review of a trial court's decision on a motion to suppress. This is particularly true where multiple issues are presented in the motion to suppress. 4 W. LaFave, *Search & Seizure* § 11.2, at 252 (1987) [hereinafter "LaFave"] (citing *State v. Johnson*, 16 Or.App. 560, 519 P.2d 1053, 1058–59 (1974)). Many jurisdictions require specific findings of fact on all motions to suppress. *See* LaFave at § 11.2 n. 188. We believe the requirement a sound one.

was malfunctioning as a pretext to stop his vehicle to search for evidence of drug trafficking.

■ The protective shield of the fourth amendment applies when an officer stops an automobile on the highway and detains its occupants. *State v. Sierra*, 754 P.2d 972, 975 (Utah Ct.App.1988). A police officer may constitutionally stop a citizen on two alternative grounds. First, the stop "could be based on specific, articulable facts which, together with rational inferences drawn from those facts, would lead a reasonable person to conclude [defendant] had committed or was about to commit a crime." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *State v. Christensen*, 676 P.2d 408, 412 (Utah 1984); *State v. Trujillo*, 739 P.2d 85, 88 (Utah Ct.App.1987)). Second, the police officer can "stop an automobile for a traffic violation committed in the officer's presence." *Sierra*, 754 P.2d at 977. However, an officer may not use a traffic violation stop as a pretext to search for evidence of a more serious crime. *Id.*

To determine if Trooper Avery stopped Mr. Marshall's vehicle to investigate his hunch that Mr. Marshall's vehicle was involved in drug trafficking, we determine whether a hypothetical reasonable officer, in view of the totality of the circumstances confronting him or her, would have stopped Mr. Marshall to issue a warning for failing to terminate a turn signal. *Id.* at 978.

■ Mr. Marshall claims Trooper Avery's stop of his vehicle is similar to the stop we found unconstitutional in *Sierra.* We disagree. In *Sierra*, the basis articulated for the stop was that the driver remained in the left lane too long after passing a car. In this case, Trooper Avery perceived an equipment problem with Mr. Marshall's car. Either his turn signal was malfunctioning or he had negligently failed to turn it off.[2] Courts consistently have held that a police officer can stop a vehicle when he or she believes the vehicle's safety equipment is not functioning properly.[3]

Furthermore, unlike the officer in *Sierra*, Trooper Avery was not suspicious of Mr. Marshall for other reasons before the stop, had not followed him in order to find some reason to pull him over, and, before the alleged violation occurred, had not radioed for help thereby indicating he intended to stop the vehicle.

In conclusion, we find Trooper Avery's stop of Mr. Marshall's vehicle was not a pretext, but was a valid exercise of police authority to make certain Mr. Marshall's vehicle was functioning properly.

## UNREASONABLE DETENTION

■ Next, Mr. Marshall complains that the extent of his detention and the scope of Trooper Avery's investigation exceeded constitutional limits.[4]

2. While the warning citation does not specify which provision of the Utah Code Mr. Marshall violated, the state asserts that his conduct was in violation of Utah Code Ann. § 41–6–117(1) (1988) which, with our emphasis, provides:
 It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, *or which does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment....*

3. In *Delaware v. Prouse*, 440 U.S. 648, 660–61, 99 S.Ct. 1391, 1399–1400, 59 L.Ed.2d 660 (1979), the United States Supreme Court stated that an officer has a duty in the interest of highway safety to stop vehicles for safety reasons. "Many violations of minimum vehicle-safety requirements are observable, and something can

be done about them by the observing officer, directly and immediately." *Id.* at 660, 99 S.Ct. at 1399. The Court inferred that as long as an officer suspects the driver is violating "any one of the multitude of applicable traffic and equipment regulations," the police officer may legally stop the vehicle. *Id.* at 661, 99 S.Ct. at 1400. *See Townsel v. State*, 763 P.2d 1353, 1355 (Alaska Ct.App.1988) (court held stop justified when vehicle's headlight was out, a tail light was broken, the license plate and windows were obscured, and speeding); *State v. Puig*, 112 Ariz. 519, 544 P.2d 201, 202 (1975) (suspicion of defective turn signals justified stop); *State v. Fuller*, 556 A.2d 224, 224 (Me.1989) (stop justified when blinking headlights led officer to stop vehicle for safety reasons).

4. We do not analyze this issue under article I, section 14 of the Utah Constitution as the state constitutional issue was not sufficiently particularized below nor is a reasoned analysis provid-

"[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

We have previously found that Trooper Avery's traffic stop of Mr. Marshall was justified. The remaining question is whether Trooper Avery's subsequent detention and questioning of Mr. Marshall was reasonably related to the initial traffic stop or was justified because Trooper Avery had a reasonable suspicion to believe Mr. Marshall was engaged in a more serious crime. *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988).

The United States Supreme Court has not chosen to define a bright-line rule as to the acceptable length of a detention because "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The Court has chosen to focus, not on the length of the detention alone, but on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686, 105 S.Ct. at 1575.

Trooper Avery wrote out the warning citation within ten minutes of stopping Mr. Marshall and then returned Mr. Marshall's driver's license and the vehicle rental agreement. Trooper Avery claims that as a result of his examination of Mr. Marshall's driver's license and the vehicle rental agreement and his brief conversation with Mr. Marshall, he became suspicious that Mr. Marshall was involved in drug trafficking. Specifically, Trooper Avery points to the fact that Mr. Marshall produced a New York driver's license and a California rental agreement for the vehicle. When questioned about the rental agree-

ment, Mr. Marshall said he was going skiing in Colorado and planned to return the car to San Diego, California. However, the rental agreement indicated the car was to be returned to New York in five days, the approximate time it takes to drive directly from California to New York. In addition, Mr. Marshall was driving along a well-known drug trafficking route.

As a result of his suspicion, Trooper Avery then asked Mr. Marshall if he was carrying weapons, alcohol, or drugs in the vehicle. Mr. Marshall responded he was not. Then Trooper Avery allegedly asked for permission to look into the vehicle and received Mr. Marshall's consent.

The trial judge found that Trooper Avery's "investigation was reasonable in view of the defendant's statements in regards to the vehicle ownership and the driver's usage. The destination itinerary would have put a reasonable officer on notice that something was wrong." Although not directly so stating, the judge, in substance, concluded that Trooper Avery had reasonable suspicion to believe that Mr. Marshall was involved in illegal conduct. Although it is a close call, we agree with the trial court's assessment of the reasonableness of the detention.

We find that Trooper Avery's questioning of Mr. Marshall as to conduct unrelated to the traffic stop was justified because he had reasonable suspicion to believe Mr. Marshall was engaged in a more serious crime. *See Guzman*, 864 F.2d at 1519.

In conclusion, based on the totality of the circumstances, we agree with the trial court that Trooper Avery's ten-minute detention and brief questioning of Mr. Marshall prior to Mr. Marshall's alleged consent to search the vehicle was not an unreasonable detention.

## SEARCH

On appeal, Mr. Marshall argues that even if his initial stop and subsequent detention were not constitutionally deficient, the subsequent search of the trunk of the

---

ed on appeal as to why our analysis should be different under Utah's constitution. *See State v.* *Johnson*, 771 P.2d 326, 327–28 (Utah Ct.App. 1989).

vehicle and the suitcases found in the trunk without a warrant violated his fourth amendment rights. The state contends, on the other hand, that Mr. Marshall consented to the search of the trunk and abandoned any privacy interest in the suitcases and thus Trooper Avery's search of the suitcases was constitutionally permissible.[5] In our prior opinion, we focused solely on whether the search of the suitcases was proper. We found the warrantless search of the suitcases unconstitutional as we refused to allow the state to raise the issue of fourth amendment standing for the first time on appeal. We granted the state's petition for rehearing to re-examine the related fourth amendment issues of voluntary consent and abandonment which are central to a resolution of this appeal.

### 1. Standing

The state, in its original brief on appeal, claimed Mr. Marshall was without standing to challenge the seizure of the suitcases as he had disclaimed any ownership or possessory interest in the suitcases during the search and thus had no expectation of privacy in their contents. See Rakas v. Illinois, 439 U.S. 128, 138–50, 99 S.Ct. 421, 427–34, 58 L.Ed.2d 387 (1978); State v. Valdez, 689 P.2d 1334, 1335 (Utah 1984); State v. Grueber, 776 P.2d 70, 73–75 (Utah Ct.App.1989); State v. DeAlo, 748 P.2d 194, 196–97 (Utah Ct.App.1987). The state relies upon the following testimony from the preliminary hearing:

Q. [Defense Counsel] And what was inside the trunk?

A. [Trooper Avery] There were four suitcases.

Q. Did you ask if you could look in those suitcases?

A. Uh huh (affirmative). First of all, I asked him what was in the suitcases, and he told me, right quickly, clothes. Then when I looked at him again, he told me that he didn't know where they came from, they must have been in there when he rented the car.

In our prior opinion, we relied on the Utah Supreme Court decision of State v. Schlosser, 774 P.2d 1132 (Utah 1989), which squarely held that standing to challenge the validity of a search under the fourth amendment "is not a jurisdictional doctrine [but] is a substantive doctrine that identifies those who may assert rights against unlawful searches and seizures." Id. at 1138. Citing the general rule that a substantive issue or "claim of error cannot be raised for the first time on appeal," the supreme court deemed the issue of standing waived. Id. at 1138–39.

The state attempts to distinguish Schlosser, claiming that in that case the state not only failed to raise the issue of standing in the motion to suppress hearing, but also on appeal and that here, unlike Schlosser, the state raises standing simply as an alternative ground to uphold the trial court's denial of the motion to suppress.[6] We do not

---

5. The state does not argue that Trooper Avery had probable cause to search either the car or the suitcases. We, therefore, need not deal with the troublesome issue of whether probable cause to search an automobile is sufficient under the automobile exception to search a locked suitcase found in the trunk of a car. See, e.g., United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (if probable cause exists, police can search closed containers found in vehicle); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (warrantless search of a suitcase found in the trunk of a taxi invalid); United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (warrantless search of a footlocker found in the trunk of a vehicle invalid); State v. Hygh, 711 P.2d 264, 272 n. 1 (Utah 1985) (Zimmerman, J., concurring separately) (criticizing the Ross holding).

6. Prior to Schlosser, the Utah Supreme Court had, in several cases, considered standing for the first time on appeal and had utilized the doctrine to refuse to consider the constitutional validity of a challenged search. See, e.g., State v. Constantino, 732 P.2d 125, 126–27 (Utah 1987) (per curiam) (court did not address whether the issue of standing had been raised below, but stated that defendant could not assert any expectation of privacy in vehicle because he did not own vehicle and had presented no testimony that he had permission of owner or had borrowed vehicle "under circumstances that would imply permissive use"); State v. Iacono, 725 P.2d 1375, 1377–78 (Utah 1986) (State below argued there was consent by defendant's ex-wife to search his mother's trailer. On appeal, the state argued defendant had no possessory or proprietary interest in the trailer and thus had no expectation of privacy. The court declined

find the distinction determinative.[7]

The United States Supreme Court took the same position in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), when it refused to allow the government to raise the issue of fourth amendment standing for the first time on appeal to provide an alternative ground to sustain the trial court's refusal to grant a motion to suppress. The Court concluded:

Aside from arguing that a search warrant was not constitutionally required, the Government was initially entitled to defend against petitioner's charge of an unlawful search by asserting that petitioner lacked a reasonable expectation of privacy in the searched home, or that he consented to the search, or that exigent circumstances justified the entry. *The Government, however, may lose its right to raise factual issues of this sort before this Court* when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or *when it has failed to raise such questions in a timely fashion during the litigation.*

*Id.* at 209, 101 S.Ct. at 1646 (emphasis added).

 The state, on petition for rehearing, contends that language in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), is contrary to our conclusion that the state should not be allowed to raise standing for the first time on appeal. We disagree. The language in *Rakas* relied upon by the state is consistent with our view.

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. The *prosecutor argued* that petitioners lacked standing to challenge the search because they did not own the rifle, the shells or the automobile. *Petitioners did not contest the factual predicates of the prosecutor's argument and instead, simply stated that they were not required to prove ownership to object to the search. The prosecutor's argument gave petitioners notice that they were to be put to their proof* on any issue as to which they had the burden, and because of their failure to assert ownership, we must assume, for purposes of our review, that petitioners do not own the rifle or the shells.

*Id.* at 130 n. 1, 99 S.Ct. at 424 n. 1 (citations omitted) (emphasis added).

 We agree with the state and *Rakas* that Mr. Marshall has the ultimate burden of proof to establish that his fourth amendment rights were violated or, to put it otherwise, that he had an expectation of privacy in the area searched or the articles seized.[8] Nevertheless, warrantless

to reach the issue of consent because it found that defendant lacked standing to object to the search because the stipulated evidence did not show that defendant shared ownership, use or possession of the trailer.); *State v. Valdez*, 689 P.2d 1334, 1335 (Utah 1984) (At trial, the defendant produced evidence that neither the attache case in which the evidence was found nor the vehicle belonged to the defendant. The court did not address whether the issue of standing was raised below, but declined to reach the question of the validity of the search because the defendant conceded he did not own the case or the vehicle and had failed to show any expectation of privacy.). In these earlier cases, it is sometimes unclear whether the Utah Supreme Court raised the issue of standing *sua sponte* on appeal or permitted the state to raise the issue of standing for the first time on appeal. We assume that *Schlosser* supercedes these earlier cases and thus do not follow them.

7. Although the Utah Supreme Court refused to allow standing to be utilized to attack the trial

court's granting of a motion to suppress in *Schlosser*, the court relied on *State v. Goodman*, 42 Wash.App. 331, 711 P.2d 1057 (1985), which held the state could not raise the issue of standing for the first time on appeal to provide an alternative ground for sustaining the trial court's denial of a motion to suppress. *Id.* 711 P.2d at 1060.

8. However, the failure of the state to challenge Mr. Marshall's standing at the suppression hearing did not give Mr. Marshall an opportunity to assert his expectation of privacy. *See Combs v. United States*, 408 U.S. 224, 227–28, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (per curiam) (Where petitioner's failure to assert an expectation of privacy may have been explained by the Government's failure to challenge standing either at the suppression hearing or at trial, the United States Supreme Court remanded to the district court for further proceedings to allow petitioner to establish a privacy interest.).

searches are per se unreasonable and the burden is on the state, in the first instance, to show that a warrantless search is lawful. *State v. Christensen*, 676 P.2d 408, 411 (Utah 1984).

We believe *Rakas* is consistent with our view that the prosecutor, as part of the state's burden to establish the constitutionality of a warrantless search, must give a defendant "notice that he will be put to his proof" on the issue of fourth amendment standing. This can be done at any time during the hearing on a defendant's motion to suppress as long as the defendant has an opportunity to put on evidence to meet the claim.[9] Once the defendant has been put on notice that the state claims the warrantless search was constitutional because he has no expectation of privacy in the area searched, then the defendant must factually demonstrate that he does have standing to contest the warrantless search. We believe the *Schlosser* standing rule was fashioned to protect the defendant from being required to deal with new legal issues on appeal when he had no warning of the necessity to develop the relevant facts below.

### 2. *Consent/Abandonment*

The state, on petition for rehearing, excuses its failure to raise the issue of standing claiming that neither Mr. Marshall, the state nor the trial judge focused on the search of the suitcases in the motion to suppress hearing. Rather, the state claims the hearing centered on the pretextual nature of the stop, the unreasonable detention of Mr. Marshall and the unlawful search of the trunk.

Mr. Marshall, on petition for rehearing, claims the following comment made by defense counsel sufficiently focused the proceeding on the search of the suitcases:

"Additionally there is no evidence that there was consent to search the bags."

Upon a re-examination of the record, we agree with the state that the parties and the trial judge did not focus on the critical issue of the search of the suitcases at the motion to suppress hearing. The result is that the trial judge did not make adequate findings of fact on the issues of voluntary consent to search the trunk or the suitcases and Mr. Marshall's alleged abandonment of any privacy interest in the suitcases, which the parties now agree are pivotal on appeal. We therefore remand for a rehearing on these critical issues. We nevertheless discuss the controlling law to guide the trial court on rehearing.

A search is valid under the fourth amendment if it is conducted as a result of the defendant's voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *State v. Sierra*, 754 P.2d 972, 980 (Utah Ct.App.1988). "[T]he question [of] whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047–48. "A trial court's finding of voluntary consent will not be reversed unless it is clearly erroneous." *United States v. Miller*, 589 F.2d 1117, 1130 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979).

In *United States v. Abbott*, 546 F.2d 883 (10th Cir.1977), the Tenth Circuit outlined the specifics necessary for the government to sustain its burden to show that voluntary consent was given:

(1) There must be clear and positive testimony that the consent was "unequivocal and specific" and "freely and intelligent-

---

9. The defendant's testimony at the motion to suppress hearing cannot be used against the defendant at trial. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (prosecutor cannot use a defendant's testimony at a suppression hearing as substantive evidence of guilt at trial unless defendant makes no objection). We note, however, that the United States Supreme Court had not decided whether the *Simmons* rule precludes the use of a defendant's suppression hearing testimony to impeach the defendant's testimony at trial. *See United States v. Salvucci*, 448 U.S. 83, 94 & n. 9, 100 S.Ct. 2547, 2554 & n. 9, 65 L.Ed.2d 619 (1980).

ly given"; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

*Id.* at 885 (quoting *Villano v. United States*, 310 F.2d 680, 684 (10th Cir.1962)). *See also United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir.1985). *See generally State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980); *State v. Sierra*, 754 P.2d 972, 980–81 (Utah Ct.App.1988).

■ Even when a defendant voluntarily consents to a search, the ensuing search must be limited in scope to only the specific area agreed to by defendant. "The scope of a consent search is limited by the breadth of the actual consent itself.... Any police activity that transcends the actual scope of the consent given encroaches on the Fourth Amendment rights of the suspect." *United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985); *see, e.g., People v. Thiret*, 685 P.2d 193, 201 (Colo.1984) (scope of consent exceeded when police asked to "look around" the house, then conducted a 45–minute search of rooms, drawers, boxes and closed containers).

The trial court made the following conclusory finding on the issue of Mr. Marshall's consent: "The Defendant consented to the search. There was no evidence of duress or coercion." This conclusory finding on consent is not particularly helpful in determining whether Mr. Marshall's consent was "unequivocal and specific" as it does not detail what Mr. Marshall agreed could be searched—the interior of the passenger compartment, the trunk, or the locked suitcases.[10] Furthermore, the relevant portions from the transcript of Trooper Avery's testimony are troubling:

Q. [Defense Counsel] What were the words he [sic] used when you asked him to search his vehicle?

. . . .

A. [Trooper Avery] I asked Mr. Marshall if—if there were any—if there was any—were there any drugs in the vehicle, and he took two or three seconds—no, wait a minute, I guess—I first asked him if he was carrying any weapons and he told me no. I then asked him if he was carrying any—if there was any alcohol in the vehicle, he said that he did not drink. I recall both answers were quite quick. And then I asked him if there were any drugs in the vehicle, he paused for, you know, probably two or three seconds, and then told me no. I then asked him if it would be okay if I looked in the vehicle, search the vehicle, and he said go ahead.

Q. Now, did you ask if you could look in the vehicle, or did you ask if you could search the vehicle?

A. Well, according to this [his report], I said—I asked if I could look in the vehicle.

Q. So, it was "look in the vehicle"? You didn't ask if you could open anything inside the vehicle or anything else, did you?

A. No. I just asked if I could look in the vehicle.

Q. And what happened then?

A. Mr. Marshall just told me, you know, he said go right ahead. He got out, gathered up his papers and we walked up to the front of the vehicle, and he had to open the passenger door, as I recall.

. . . .

Q. And how did you get in the trunk?

A. I asked him, I said—asked him if he had the key to the trunk and he says yes, and I says—and I asked him if he'[d] open it, which he did, he tried. He was extremely nervous at the time. I—

Q. So did you open the trunk?

A. No, sir, I did not. He—he could not—there was a little latch over the key hole. He was shaking so hard, he

---

10. *See supra* note 1 and accompanying text for a discussion of the importance of detailed findings on a motion to suppress.

couldn't even hold the latch open, so I held the latch up for him so he could insert the key.

Without the assistance of specific findings of fact, we cannot resolve the difficult issue of whether Mr. Marshall's opening the trunk constituted implied consent to search the trunk under the totality of the circumstances presented. *See United States v. Almand,* 565 F.2d 927, 930 (5th Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978) (voluntary consent found where defendant silently reached into his pocket, removed key, then unlocked and opened camper door).

Furthermore, the record creates a substantial question as to whether the court's general finding that there was "no evidence of duress or coercion" was intended to apply to the search of the trunk or, even if it was, whether the finding is consistent with the standard required for a voluntary consent. *See United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977); *State v. Sierra,* 754 P.2d 972, 980–81 (Utah Ct.App. 1988). Likewise, the court in its findings fails to focus on the search of the locked suitcases and the issues of voluntary consent or abandonment.

■ Even if we were to accept the state's argument that the undisputed facts support a finding that Mr. Marshall abandoned [11] any expectation of privacy in the suitcases by his ambiguous disclaimer of ownership and that the state should be allowed to raise this fourth amendment standing issue for the first time on appeal, we would be unable to dispose of this case on the record before us. The state, in its petition for rehearing, correctly points out

that "a loss of standing to challenge a search cannot be brought about by illegal police conduct." *United States v. Labat,* 696 F.Supp. 1419, 1425 (D.Kan.1988).

Thus, we would have to determine if the search of the trunk was illegal or was a result of a voluntary consent. This we cannot do on the record before us.

Even if we determined the search of the trunk was unlawful, the "defendant must show a nexus between the allegedly unlawful police conduct and the abandonment of the property." *Id.* at 1426. *See, e.g., United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982), *cert. denied,* 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983) (While "an unconstitutional seizure or arrest which prompts a disclaimer of property vitiates that act," *id.* at 1045, the court found the defendant's disclaimer was not precipitated by improper conduct. *Id.* at 1048.); *United States v. Gilman,* 684 F.2d 616, 620 (9th Cir.1982) ("There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed."); *United States v. Beck,* 602 F.2d 726, 730 (5th Cir. 1979) (if there is a nexus between unlawful police conduct and the discovery of evidence, the court should suppress the evidence). *See generally Search and Seizure: What Constitutes Abandonment of Personal Property within Rule that Search and Seizure of Abandoned Property Is Not Unreasonable—Modern Cases,* 40 A.L.R.4th 381 (1985). Again, there is no finding on this crucial issue.

Therefore, we reverse and remand this interlocutory appeal for a rehearing on Mr. Marshall's motion to suppress on the limited issues of whether Mr. Marshall volun-

---

**11.** *See, e.g., United States v. Jones,* 707 F.2d 1169, 1173 (10th Cir.1983) (Court found abandonment when police initially saw defendant running with a brown satchel, however, when they captured defendant, he did not have the satchel and disavowed knowledge of it. Police later found the satchel outside the building and searched it.); *United States v. Kendall,* 655 F.2d 199, 202 (9th Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982) (court found abandonment where the defendant, after picking up the luggage at the claim area, produced a mismatched baggage claim check, told agents that his name was not on the luggage

name tag, and allowed the agents to return the luggage to the claim area, thus giving the agents the impression that he had no interest in the luggage); *United States v. Veatch,* 674 F.2d 1217, 1220–21 (9th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982) (court found abandonment where the defendant disclaimed ownership of a wallet found on the seat of the vehicle); *United States v. Colbert,* 474 F.2d 174, 177 (5th Cir.1973) (en banc) (court found abandonment when defendants disclaimed ownership of suitcases and began to walk away from them).

tarily consented to the search of the trunk or the suitcases, whether Mr. Marshall abandoned any privacy interest in the suitcases and thus lacks standing to challenge their search, and finally, if the trial court finds there was an illegal search of the trunk or suitcases, whether there is a sufficient nexus between that illegal search and Mr. Marshall's abandonment, if any, of his expectation of privacy in the suitcases.

DAVIDSON and JACKSON, JJ., concur.