**STATE of Utah, Plaintiff and Appellee,**

**v.**

**William Eluie CASTNER, II and Bonnie Lee Castner, Defendants and Appellants.**

**No. 910275–CA.**

Court of Appeals of Utah.

Jan. 24, 1992.

Robert M. McRae, Vernal, for defendants and appellants.

R. Paul Van Dam and Kris C. Leonard, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Defendants Bonnie Lee Castner and William Eluie Castner, II, appeal from several drug related convictions. Defendants argue that the trial court erred in not granting their motion to suppress certain evidence found as a result of a search of their vehicle and personal belongings. We affirm.

## BACKGROUND

The following factual statements are taken from undisputed testimony at the suppression hearing. The Castners elected not to testify at that hearing; therefore only the State presented evidence. Since the Castners stipulated that the preliminary hearing transcript could be utilized at the suppression hearing, the State's evidence is not controverted.

On August 1, 1990, Officer Merv Gustin was proceeding east on U.S. 40 outside of Duchesne, Utah. Using radar, Officer Gustin clocked the vehicle defendant William Castner was driving, and determined Castner was speeding. Officer Gustin pursued the vehicle and eventually Castner pulled off the road and stopped his vehicle. Officer Gustin testified that before the vehicle pulled off the road, he observed a passenger in the back seat making several erratic movements and moving items from the front seat to the back seat area.

When Officer Gustin approached the vehicle, he spoke with Castner through the passenger window. Seated in the front passenger seat was Castner's twelve year-old son. Defendant Bonnie Castner was in the back seat. Officer Gustin asked Castner for identification and the vehicle registration, whereupon Castner exited the vehicle, produced a valid driver's license and directed his son to get the registration from under the driver's seat. When his son could not locate the registration, Castner, who was out of the car at this time, opened the passenger door and began reaching under the front seats. Officer Gustin became concerned that Castner was reaching for a weapon, and asked Castner if he had any weapons in the vehicle. Castner said no. Officer Gustin then examined the vehicle registration and compared the vehicle registration number (VIN) on the registration with the one on the dashboard. There was no discrepancy. Officer Gustin asked if he could check the VIN on the inside doorpost of the vehicle. Officer Gustin testified that Castner consented and Officer Gustin opened the car door.

Officer Gustin further testified that he observed a green leafy substance on the floor in the front of the vehicle. Believing it to be marijuana, Officer Gustin picked it up, went to his vehicle and radioed for another officer. He then issued Castner a speeding ticket. Castner asked Officer Gustin a few questions about where he could go to pay the ticket and then asked why Officer Gustin had inquired about weapons. Officer Gustin replied that he had seen Bonnie Castner making erratic movements before the vehicle stopped. Officer Gustin then asked Castner if he had any drugs in the vehicle. When Castner replied in the negative, Officer Gustin asked if he could look. According to Officer Gustin, Castner said he could look, and stated "we don't have anything here." Castner reached into the back seat of the vehicle and pulled two jackets up to the front seat. Officer Gustin asked Castner to unlock the back door, which Castner did. Officer Gustin located a zipped pouch at Bonnie Castner's feet and asked what was in it. Bonnie Castner stated it contained Castner's belongings as Officer Gustin began to unzip the bag. Bonnie Castner attempted to pull the bag from Officer Gustin's hands but not before Officer Gustin found marijuana and drug paraphernalia in the pouch.

At that time, a second officer arrived and he assisted Officer Gustin in the search of the vehicle. Bonnie Castner got out of the vehicle, holding her purse. Officer Gustin asked if she had any drugs in her purse and Bonnie Castner said no. Officer Gustin then removed one of several zipped pouches from the top of the purse and looked inside. He found two more baggies of marijuana. Officer Gustin then removed a second pouch from the purse and found that it contained a white powdery substance. At some point during the search, Castner stated that the bags belonged to him. Officer Gustin then asked Castner to open the trunk, where Officer Gustin found a gym bag and a suitcase. In the gym bag he found a set of scales and in the suitcase he found a cardboard box containing more marijuana. Officer Gustin arrested Castner. Bonnie Castner was arrested later at the Duchesne County Jail.

Based on the evidence found in the vehicle and in the purse, both Castners were charged with possession of a controlled substance (methamphetamine), a third degree felony, in violation of Utah Code Ann. § 58–37–8 (1990); possession of paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5 (1990); possession of marijuana without a tax stamp affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–106 (Supp.

1991); and possession of a controlled substance (marijuana) with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8 (1990). In addition, Castner was charged with speeding, a class B misdemeanor, in violation of Utah Code Ann. § 41–6–46 (1988).

The Castners filed a motion to suppress the evidence obtained as a result of the search. The parties stipulated the trial court could decide the motion with reference only to the preliminary hearing transcript. At that hearing, Officer Gustin testified on behalf of the State; the Castners presented no evidence. The trial court found that the initial stop of the vehicle was justified, and that the Castners consented to the examination of the VIN, and the search of the interior of the vehicle and the trunk. The Castners then entered pleas of no contest and reserved the right to appeal the denial of their motion, pursuant to *State v. Sery*, 758 P.2d 935 (Utah App.1988). This appeal followed.

## ISSUES AND STANDARD OF REVIEW

On appeal, the Castners raise four issues: (1) was the stop of the vehicle legal; (2) did the request to see the VIN on the doorpost exceed the scope of the traffic stop, and if so, did this taint the product of the second search; (3) were the Castners illegally detained after the citation was issued; (4) did the search of the vehicle and its contents exceed the scope of the Castners' consent?

We review a trial court's factual findings underlying the decision to suppress evidence under the "clearly erroneous" standard. *State v. Leonard*, 825 P.2d 664, (Utah App.1991); *State v. Carter*, 812 P.2d 460, 465 (Utah App.1991); *State v. Grovier*, 808 P.2d 133, 135 (Utah App.1991). We defer to the trial court's fact-finding role and reverse those factual findings only if they are against the clear weight of the evidence. *State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991).

## I. THE STOP

In arguing that there was no probable cause to justify the search of their vehicle, the Castners argue the State erroneously relied on furtive movement as probable cause for the stop and subsequent search of the vehicle. While Officer Gustin testified he observed Bonnie Castner making erratic movements, "like she was really grabbing stuff from the front and putting them down at her feet," the stop of the vehicle was not based on these observations. Rather, Castner was stopped because he was speeding, a fact which he does not dispute on appeal. Therefore, the Castners' assertion that the stop was effectuated by Officer Gustin for reasons other than ticketing Castner for speeding, is without merit.

## II. EXAMINATION OF THE VIN

### A. Was the Scope of the Traffic Stop Exceeded?

■ The Castners next argue the stop of their vehicle and their subsequent detention constituted unreasonable delay because the request to see the doorpost VIN exceeded the scope of the traffic stop, and that therefore the results of the alleged consent search are inadmissible.

After Castner had given Officer Gustin his valid driver's license and vehicle registration, Officer Gustin asked to compare the VIN which was visible on the dashboard of the vehicle with the VIN on the inside of the doorpost. When he opened the vehicle door to examine the VIN, Officer Gustin also looked on the floor of the vehicle and discovered burnt marijuana.[1]

■ In determining the limits of police conduct during a traffic stop, we employ a two-prong analysis: "whether the officer's action was justified at its inception, and whether it was reasonably related to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Having determined that the

---

1. While officer Gustin picked up the burnt marijuana and put it on the dashboard of his police car, the marijuana was subsequently lost. Therefore, suppression of the burnt marijuana was not an issue below and is not an issue on appeal.

stop was justified at its inception, we must now address whether the officer's request to search the interior of the vehicle for the second VIN was "reasonably related" to the issuance of a speeding ticket. We hold that it was not.

"[W]hen an officer stops a vehicle for a traffic violation, he may briefly detain the vehicle and its occupants while he examines the vehicle registration and the driver's license." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citing *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). *See also State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990). "[O]nce the driver has produced a valid license and evidence of entitlement to use the vehicle, 'he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'" *Robinson*, 797 P.2d at 435 (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)). Any further questioning or detention on the part of the police, absent an articulable suspicion of other criminal activity, is illegal. *Guzman*, 864 F.2d at 1519–20.

In this case, Officer Gustin asked for and received proper identification regarding the driver and the vehicle. The VIN on the vehicle dashboard was visible to Officer Gustin from the exterior of the vehicle and was consistent with the registration. Officer Gustin testified he routinely checked both VINs, as he had been advised to do so in several auto theft and drug interdiction classes. However, Officer Gustin did not testify or otherwise indicate that he believed the vehicle was stolen, or that at the time when he checked the VINs, he had any reason to suspect drugs were in the vehicle. No circumstances existed which suggested to Officer Gustin that the vehicle was stolen or that the Castners had committed any crime. *See Guzman*, 864 F.2d at 1519–20 (no objective circumstances suggested defendant had committed any

crime more serious than failure to wear seat belt); *cf. United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.1984) (when driver of rented vehicle was not listed as authorized driver, continued detention was justified); *State v. Marshall*, 791 P.2d 880, 883–84 (Utah App.) (...), cert. denied, 800 P.2d 1105 (Utah 1990). (Continued detention was justified where officer had reasonable suspicion to believe driver was involved in drug trafficking). Under the specific facts before us, Officer Gustin's request to search the interior of the vehicle for the second VIN was not reasonably related to the scope of this traffic stop.[2] Accordingly, the marijuana discovered during this search could not be utilized by the State as a basis for probable cause for a further search.

### B. Was the Product of the Second Search Tainted?

The State nonetheless argues the trial court properly denied the motion to suppress based on the determination that the Castners consented to Officer Gustin's search of the interior of the vehicle and contents. Consent is a recognized exception to the warrant requirement. However, evidence from a consent search can only be admitted if the State establishes that consent was voluntary, and that the search did not exceed the scope of that consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Price*, 925 F.2d 1268 (10th Cir.1991); *State v. Arroyo*, 796 P.2d 684, 687 (Utah 1990). Further, in *Arroyo*, our supreme court determined that the prosecution has a much heavier burden when proving consent after illegal police action than when proving consent which does not follow police misconduct. *Arroyo*, 796 P.2d at 687–88. "The inquiry should focus on whether the consent was voluntary and whether the consent was obtained by police exploitation of the prior illegality." *Id.*

---

**2.** *See, e.g., State v. Schlosser*, 774 P.2d 1132, 1137 (Utah 1989) (Utah Supreme Court held that officer's opening of a vehicle door to ask passenger for identification was "a search that was not incidental to the routine traffic stop and not justified by any exception to the Fourth Amendment requirement of probable cause."); *see also State v. Larocco*, 794 P.2d 460 (Utah 1990) (Utah Supreme Court held that opening an unoccupied vehicle's door to inspect the VIN constituted an unreasonable search under Utah Constitution).

### 1. Voluntary Consent

■ The trial court found the Castners had consented to the searches and the Castners do not challenge this finding on appeal. However, the trial court did not address whether or not the consent was voluntary.

■ In assessing this question, we look to the totality of circumstances to ascertain whether consent in fact was voluntarily given and not the result of duress or coercion express or implied. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59. *See also Marshall,* 791 P.2d at 887. The State bears the burden to prove the consent was voluntary. *State v. Webb,* 790 P.2d 65, 82 (Utah App.1990). We further look to see if there is clear and positive testimony that the consent was unequivocal and freely given. *Marshall,* 791 P.2d at 887–88; *State v. Grovier,* 808 P.2d at 136.

We find nothing in the undisputed facts to indicate that Castner's consent to the second search was coerced and therefore involuntary. It was not until after Officer Gustin had returned Castner's identification and issued him a citation that Officer Gustin sought consent to search the entire vehicle. The search was also preceded by Castner's initiation of further conversation with Officer Gustin, requesting directions as to where he could go to take care of the citation. Castner wanted to take care of the citation immediately and did not want to wait for a "mailer." Moreover, Castner initiated a further inquiry about Officer Gustin's weapon question. Thus, it was Castner who started and extended the conversation which preceded Officer Gustin's second request to search. There is no indication that Castner believed he was not free to go at this time. There is no hint in the ongoing conversation that Castner was being detained by Officer Gustin for the purpose of eliciting consent to search.

Therefore, we conclude that Castner voluntarily consented to Officer Gustin's request to search their vehicle.

### 2. Dissipation of Taint

■ The conclusion that Castner's consent to the vehicle search was voluntarily given does not end our inquiry. We must also determine if the consent was untainted by the prior illegality. *United States v. Thompson,* 712 F.2d 1356, 1361 (11th Cir. 1983); *Arroyo,* 796 P.2d at 689. "In some instances, voluntary consent to a search will be deemed unlawful, if it follows initial police illegality." *State v. Hargraves,* 806 P.2d 228, 231 (Utah App.1991). The remaining question, therefore, is whether the consent for the second search was obtained by exploitation of the prior illegal action by Officer Gustin.

■ In the instant case, the findings by the trial court are clearly lacking, as the State concedes. Nonetheless, absent findings by the court below, we may decide the taintedness issue if the record is sufficiently detailed and the facts uncontested.[3]

■ It is well established that evidence is not subject to exclusion if "the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'" *Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)). We examine several factors to determine if there has been an exploitation of a prior illegality: temporal proximity of the illegality and the evidence sought to be suppressed, the presence of intervening factors, and the purpose and flagrancy of the misconduct. *See Arroyo,* 796 P.2d at 690–91 n. 4 (citing *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); 3 W. LaFave, *Search and Seizure,* § 8.2(d), at 195 (2d ed. 1987)).

---

3. *See Thompson,* 712 F.2d at 1361. Although in similar cases we have remanded for more detailed findings, *see, e.g., State v. Lovegren,* 798 P.2d 767, 771 (Utah App.1990), in this case the record at the suppression hearing is sufficiently detailed to allow us to determine whether or not the State has met its burden. *See State v. Sims,* 808 P.2d 141, 151 (Utah App.), *cert. pending as of date of publication; State v. Robinson,* 797 P.2d 431, 437 (Utah App.1990).

In this case, the time which intervened between the first illegal search of the second VIN, and the consent for the second search of the vehicle was not long. However, other intervening circumstances dissipated the effect of the illegal action on Officer Gustin's part. Castner was no longer detained by Officer Gustin when Castner consented to the second search. The undisputed facts evidence an awareness on Castner's part that the encounter had ended. His driver's license had been returned and the citation issued. Castner voluntarily extended the encounter by questioning Officer Gustin concerning where and how to take care of the citation and then asking about Officer Gustin's weapon inquiry.

In this case, Castner's consent to the vehicle search was sufficiently attenuated so that the taint from the illegal search for the doorpost VIN had dissipated.[4]

### III. SCOPE OF CONSENT

■ Finally, the Castners challenge the scope of the search. Castner claims he consented only to having the VIN checked and to having Officer Gustin search the vehicle, and that Officer Gustin's search of the contents of the vehicle, i.e., the closed containers, was illegal.[5] "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* — U.S. —, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991) (citations omitted). While a suspect may limit the scope of the search to which she or he has consented, "if [that] consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for re-

quiring a more explicit authorization." *Id.* 111 S.Ct. at 1804. *See also United States v. Smith,* 901 F.2d 1116, 1119 (D.C.Cir. 1990) (consent to search luggage for drugs allowed, search of a paper bag as "paper bag within a suitcase is as likely to contain drugs as the luggage itself"); *United States v. Anderson,* 859 F.2d 1171, 1176 (3d Cir.1989) (where defendant consented to search of his car for "any letters, documents, papers, materials or other property which is pertinent to the investigation," this authorized police to look in the trunk and to open closed bags). In the instant case, there is nothing in the undisputed facts that even remotely suggests Castner limited the scope of consent when Officer Gustin asked to search the vehicle. Castner opened the rear door of the vehicle for Officer Gustin and also opened the trunk. We conclude the scope of the consent given extended to the contents of the containers found in the interior of the vehicle and the trunk.

### CONCLUSION

The search for the doorpost VIN in this case exceeded the scope of a traffic stop. However, the incriminating evidence subsequently obtained pursuant to the second voluntary consent search was not the product of the illegality. Accordingly, we affirm the trial court's denial of the Castners' motion to suppress the evidence found as a result of the vehicle search.

BILLINGS, J., concurs.

ORME, J., concurs in result only.

---

4. The Castners also allege that they were illegally detained. The trial court made no finding as to whether the Castners were illegally detained after Gustin issued the citation. The court did not address this issue because the Castners did not raise it below. We will not consider an argument on appeal unless it was raised at the trial court. *State v. Marshall,* 791 P.2d 880, 884 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990). Thus, we decline to address this issue.

5. We note that on appeal, the Castners challenge the search of the pouch found in the back seat, and the pouch taken from Bonnie Castner's purse. However, the Castners have waived their right to challenge the evidence found in the purse since this issue was not raised below. *See Marshall,* 791 P.2d at 886; *State v. Webb,* 790 P.2d 65, 71 n. 2 (Utah App.1990).