**STATE of Utah, Plaintiff and Appellee,**

v.

**David Vance GROVIER and Petie Ray Hale, Defendants and Appellants.**

No. 900329–CA.

Court of Appeals of Utah.

March 7, 1991.

Loni F. DeLand (argued), McRae & De-Land, Salt Lake City, for defendants and appellants.

R. Paul Van Dam, State Atty. Gen., Marian Decker (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Defendant appeals from an order denying his motion to suppress evidence. The defendant, David Vance Grovier, was charged with possession of a controlled substance (24.8 grams of methamphetamine) in violation of Utah Code Ann. § 58–37–8 (Supp.1990). Defendant challenges the order on three grounds: (1) the officer did not have reasonable suspicion to stop him, (2) defendant's consent to search his vehicle was not voluntary, and (3) the search of his vehicle exceeded the scope of his consent. We affirm.

## FACTS

On February 23, 1990, at approximately 10:30 a.m., Agent Lynn Davis of the Cedar City Police Department received a message to call one of his confidential informants. The informant gave the license plate number of a green 1973 Buick Riviera as either 175BAT or 175BAP and told Davis that there was methamphetamine in the car.

Officer Davis relayed this information to the Chief of Police, Peter J. Hansen, who then located the vehicle and had one of his officers, Sergeant Dennis Anderson, stop the green Riviera as it approached the Iron County Correctional Facility between 11:15 and 11:30 a.m. Sergeant Anderson, not having been told by Hansen why the car should be stopped, told defendant that "a citizen had possibly seen him smoking marijuana," to which defendant replied, "I don't have anything, go ahead and search." Anderson then asked, "can we?" and defendant replied, "yes." Sergeant Anderson informed defendant that additional officers were on the way to help and defendant stated, "go ahead and search."

Shortly after Anderson stopped defendant, Hansen and Officer Kelvin Orton arrived. Orton searched defendant's passenger, Petie Ray Hale, and removed a "fannypack" which was searched by Hansen. Inside the fannypack, Hansen found a marijuana pipe and other drug paraphernalia. Subsequently, the trial court granted Hale's motion to suppress this evidence on the grounds that it was obtained without a warrant and that no exception to a warrantless search existed.

While Hale was being arrested, Hansen informed defendant that he intended to search the car for drugs. Defendant replied, "go ahead and look." Hansen then asked him if his consent included the "trunk, passenger area, and motor compartment," to which defendant replied, "yes." Several officers searched the vehicle for approximately twenty minutes during which time no controlled substances were found.

Hansen approached defendant a second time, telling him that he believed that there were drugs in the car, and asked defendant if he intended to tell Hansen where to find them. Hansen further told defendant that he intended "to remove the car from the street into the sally port of the correctional facility and dismantle the car bolt by bolt if necessary." Defendant replied, "go for it."

Defendant was then handcuffed, and he, Hale, and the vehicle were transported to the correctional facility which was approximately 200 yards from the initial stop. Defendant, while riding in the back of Anderson's patrol car on the way to the

correctional facility, stated that he did not want his car "torn apart."

Once at the facility, defendant, who was not formally charged at the time, was placed in a holding area between the sally port and the booking area while the search proceeded. While there, defendant told Hansen he did not have permission to dismantle the car. Hansen then instructed the officers conducting the search not to dismantle the car. Upon arriving at the correctional facility Gary Bulloch, a corrections officer, searched defendant. While being searched, defendant stated that he did not want his car torn apart.

After an unsuccessful cursory search, Hansen left the sally port to obtain a search warrant to dismantle the car. While Hansen was seeking to obtain a search warrant, Davis continued the search. When Davis pushed an unclamped heater hose aside to reach up under the dash, the heater hose end fell away, revealing a cloth wrapped around a ziplock bag containing 24.8 grams of methamphetamine.

### STANDARD OF REVIEW

We review findings of fact underlying a trial court's decision on a motion to suppress under the "clearly erroneous" standard. *State v. Marshall*, 791 P.2d 880, 882 (Utah Ct.App.1990); *State v. Webb*, 790 P.2d 65, 82 (Utah Ct.App.1990); *State v. Sierra*, 754 P.2d 972, 974 (Utah Ct.App. 1988). A trial court's findings of fact are clearly erroneous only if they are against the clear weight of the evidence. *Marshall*, 791 P.2d at 882.

### THE INITIAL STOP

Defendant claims that Sergeant Anderson did not have sufficient reasonable suspicion to make the initial stop. This court has noted that there are three constitutionally permissible levels of police stops:

(1) [A]n officer may approach a citizen at anytime and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that defendant has committed or is about to commit a crime; however, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed.

*State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *State v. Deitman*, 739 P.2d 616, 617–618 (Utah 1987) (per curiam)).

We have previously held that a level two stop requires a "reasonable articulable suspicion" that defendant has committed or is about to commit a crime. *State v. Menke*, 787 P.2d 537, 541 (Utah Ct.App.1990); *see also*, Utah Code Ann. § 77-7-15 (Supp. 1990). Moreover, a reasonable articulable suspicion must be based on " 'objective facts' that the 'individual is involved in criminal activity.' " *State v. Holmes*, 774 P.2d 506, 508 (Utah Ct.App.1989) (quoting *State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985)). "Whether there are objective facts to justify such a stop depends on the 'totality of the circumstances.' " *Id.* (quoting *State v. Mendoza*, 748 P.2d 181, 183 (Utah 1987)).

A reasonable suspicion may be premised upon an informant's tip so long as it is sufficiently reliable. *Alabama v. White*, — U.S. —, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990); *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972); *United States v. Thompson*, 906 F.2d 1292, 1295 (8th Cir.1990). In the case at bar, the trial court made the following findings: the informant was known to Officer Davis; he had previously tipped Davis approximately ten to fifteen times; he reported to Davis that he observed methamphetamine in an older green Buick Riviera driven by a man with a female passenger; he identified the license plate number as either 175BAT or 175BAP; and he last observed the vehicle at the south end of Main Street in Cedar City.

Based on those findings, the trial court concluded that the police officer's stop was "based upon articulable and substantial

facts that would lead a reasonable and prudent police officer to believe that a felony was presently being committed...." After examining the totality of the circumstances, we conclude that the trial court's determination of reasonable suspicion was not clearly erroneous.

■ Defendant further claims that even if the officer had a reasonable suspicion that a crime had been committed, the officer's search exceeded the minimum intrusion necessary to dispel or confirm his reasonable suspicion. In analyzing acceptable lengths of detention, we have stated:

> The United States Supreme Court has not chosen to define a bright-line rule as to the acceptable length of a detention because "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The Court has chosen to focus, not on the length of the detention alone, but on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686, 105 S.Ct. at 1575.

*State v. Marshall*, 791 P.2d 880, 884 (Utah Ct.App.1990).

Defendant claims that the search, which lasted no longer than ninety minutes, exceeded the minimum intrusion necessary to dispel the officer's reasonable suspicions. However, the length of defendant's detention is not the primary focus. Rather, the focus is upon the means used by the officers to dispel their suspicions. *Id.* Chief Hansen testified that the reason he removed the car to the sally port to continue the search was for safety reasons. He further testified that no major interruptions occurred during the entire search. Accordingly, the trial court's factual finding that the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions was not clearly erroneous.

## CONSENT

■ "A warrantless search conducted pursuant to a consent that is voluntary in fact does not violate the fourth amendment." *State v. Webb*, 790 P.2d 65 (Utah Ct.App.1990) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). Whether a consent to a search was voluntary is a question of fact to be determined from the totality of all the circumstances. *State v. Marshall*, 791 P.2d 880, 887 (Utah Ct.App. 1990) (citing *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047)); *Webb*, 790 P.2d at 82. Further, the State has the burden of showing that the consent was voluntarily given. *Webb*, 790 P.2d at 82; *Marshall*, 791 P.2d at 887. This court has adopted the tenth circuit's analysis for determining whether the State has met its burden:

> (1) There must be clear and positive testimony that the consent was "unequivocal and specific" and "freely and intelligently given"; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

*Webb*, 790 P.2d. at 82 (quoting *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.1977)) (citations omitted).

■ When Chief Hansen asked defendant for his consent to search the car he replied, "go ahead and look." When asked if his consent included a trunk and motor compartment search, defendant replied, "yes." When Hansen told defendant that he intended to remove the car to the correctional facility and dismantle it bolt by bolt if necessary, defendant replied, "go for it."

Defendant contends that his consent was not voluntary because he was either handcuffed or in the holding area after the initial detention. However, the facts do not support his claim. When defendant initially consented to the search, he was neither handcuffed nor in the holding area. His consent was unequivocal and unlimited regarding the scope of the search. Later,

he told Chief Hansen that he did not want his car dismantled. At that time, the handcuffs had been removed and he had been placed in the holding area. Finally, when defendant stated that the officers had better not tear his car apart, he was not handcuffed or otherwise restrained.

Defendant's statements about dismantling and not tearing apart his car did not revoke his consent, they simply limited the scope of the search to which he had previously consented. Defendant was detained while his car was searched, but the detention came after he had given his consent. The later detention did not produce coercion or duress which would preclude a finding of voluntary consent at the outset.

Defendant was not informed of his right to refuse consent. While failure to inform suspects of their right to refuse consent is not determinative, it is a factor to be evaluated in assessing the voluntariness of a suspect's consent. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047. Therefore, the officer's failure to inform defendant of his right to refuse to consent, in and of itself, does not indicate that defendant involuntarily consented.

The trial court considered this court's requirements as set forth in *Webb* and determined that defendant voluntarily consented to the search of his car. The trial court's finding on this issue was not clearly erroneous. See *State v. Sterger*, 808 P.2d 122, 126–127, n. 5 (Utah Ct.App.1991).[1]

## THE SCOPE OF THE SEARCH

■ Defendant argues that Officer Davis's pushing aside of the heater hose exceeded the scope of the search to which he consented. We disagree. "The scope of a consent search is limited by the breadth of the actual consent itself." *United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985), *quoted in Marshall*, 791 P.2d at 888. "Whether the search remained within the boundaries of the consent is a fact to

be determined from the totality of the circumstances." *U.S. v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1989). The trial court found that defendant limited the scope of the search by telling Chief Hansen not to "dismantle" his car, and by telling Officer Bulloch that he did not want his car torn apart. Accordingly, Chief Hansen instructed his officers not to "dismantle" defendant's car. The trial court further found that Officer Davis "did not go beyond the scope permitted by the Defendant's consent and did not damage the car, dismantle the car, tear the car apart, or do anything but merely push aside an unconnected heater hose...."

The heater hose was unclamped when the search began, and it became disconnected when Officer Davis pushed it aside to look up under the dash. The hose's disconnection was not the result of stripping, taking apart, or tearing down actions which would indicate that Officer Davis attempted to dismantle defendant's car. Furthermore, no other evidence was offered to show that Officer Davis or any of the officers exceeded the scope of defendant's consent. We see no error in the trial court's finding that Officer Davis's search did not exceed the scope of defendant's consent.

## CONCLUSION

We affirm the trial court's denial of defendant's motion to suppress evidence.

BENCH and RUSSON, JJ., concur.

---

**1.** We decline to follow the analytical approach taken in *State v. Bobo*, 803 P.2d 1268 (Utah Ct.App.1990) which creates a two part analysis—first a factual determination then a legal conclusion. Rather we follow Utah and federal case law which views the question of whether consent to a search was "voluntary" as a question of fact. *State v. Sterger*, 808 P.2d at 126–127, n. 5 (Utah Ct.App.1991).