STATE of Utah, Plaintiff and Appellee,

v.

Renee ELDER, Defendant
and Appellant.

No. 900065–CA.

Court of Appeals of Utah.

Aug. 7, 1991.

Earl Xaiz (argued), Yengich, Rich & Xaiz, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Judith S.H. Atherton, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

OPINION

ORME, Judge:

This is an interlocutory appeal from the district court's partial denial of defendant's motion to suppress evidence. Defendant was charged with cultivation of a controlled substance, a third degree felony, and claims the police obtained their evidence from an illegal search of his mother's home. The police did not have a warrant, but were invited to search the home

by defendant's sister, whom they believed to have authority to consent to the search. Defendant claims his sister did not have authority to consent to the search, and that the police could not have reasonably believed that defendant's sister had such authority. We reverse the trial court's denial of defendant's motion to suppress.

## FACTS

Defendant and his mother, Mrs. Elder, were the sole occupants of Elder's home. Defendant paid rent. He had the exclusive use of a bedroom and shared occupancy of the rest of the home with his mother. On the weekend of September 2, 1989, Elder was in the hospital and defendant was on a camping trip. That weekend, Elder asked her daughter, Mrs. Lones, to bring some personal items from Elder's home to the hospital. Elder gave Lones the keys to her home for this purpose. According to Officer Reynolds's testimony, in which he recounted what Lones told him, Elder also mentioned to Lones at or before this time that she was concerned defendant might be growing marijuana in the crawlspace under her home. Elder denied having said any such thing; Lones did not testify.

Lones went to Elder's home that weekend, while defendant was still on his camping trip, to get clothes to take to Elder as she had requested. While at the home, Lones took it upon herself to search defendant's room where she found what she suspected to be drug paraphernalia. Lones also searched the crawlspace where she found what appeared to be marijuana plants. Since a key to the crawlspace was not among those given to Lones, access was gained when her husband broke down the crawlspace door which was locked with two deadbolts.

Having made these discoveries, Lones called the police and invited them to search Elder's home. Before the officers conducted the search, Lones informed them that she did not live at that residence and that the owner, Elder, was in the hospital but had given her the keys to the home. Lones told the officers her brother was a tenant and that he would be out of town for a few more days. She also told them she did not have the key to the crawlspace and that her husband had kicked the door in to gain access to it. Despite this information, the police officers were adamant that they believed Lones had authority to consent to the search. Accordingly, after waiting some hours for the arrival of an officer with greater expertise in controlled substances, they searched defendant's room and the crawlspace under Elder's home without a warrant. The officers confirmed Lones's findings and seized drug paraphernalia from defendant's room and marijuana plants from the crawlspace.

At the suppression hearing, the trial court granted defendant's motion to suppress the evidence found in his bedroom. This motion was granted because the court concluded defendant maintained a reasonable expectation of privacy in his bedroom. However, the court denied defendant's motion to suppress the marijuana plants seized from the crawlspace. The court refused to suppress that evidence because it found that the crawlspace was a common area, accessible to both the landlord/mother and the tenant/son, and that defendant did not maintain a reasonable expectation of privacy there. The court further found that since Elder gave Lones the keys to her home, it was "implied" that Lones was responsible for taking care of the home, and therefore had the authority to consent to a search of the home.

The parties raise two issues on appeal. First, defendant argues the trial court incorrectly concluded that Lones had the authority to consent to the search of the crawlspace. Second, the State contends that regardless of whether actual authority existed, the officers reasonably believed Lones had authority to consent to the search and that therefore the search did not violate the Fourth Amendment.

## AUTHORITY TO CONSENT

■ Voluntary consent to a search is one of the well established exceptions to the warrant requirement of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36

L.Ed.2d 854 (1973). Also well established is the precept that a third person may consent to a search of another's property if the third person has "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). There is no question that Lones purported to consent to the search of Elder's crawlspace. At issue is whether the trial court correctly concluded that Lones had the authority to validly consent to such a search.

The trial court's pivotal finding concerns Elder's delivery to Lones of the keys to her home. From this finding, the court also found, essentially as a matter of inference, that Lones was vested with authority to care for the home in her mother's absence. On these facts, the court concluded Lones had authority to consent to the search. The court reached this conclusion despite Elder's denial that she granted or intended to grant any such authority.[1]

■ We of course defer to the trial court's findings of the underlying facts, applying a clearly erroneous standard, so long as the findings have adequate evidentiary support. *See State v. Vigil*, 815 P.2d 1296, 1299 (Utah App.1991); *State v. Bobo*, 803 P.2d 1268, 1272 (Utah App.1990). However, we will apply a correction of error standard to the trial court's ultimate legal conclusion. *Id.*

■ The trial court found that Elder gave Lones the keys to the "living areas of her home" to pick up some personal items. Solely from this finding, and absent any evidence explicitly supporting such an inference, the trial court inferred that Lones had authority to care for Elder's home. On this basis, the court concluded Lones had authority to consent to the search of the crawlspace. The trial court's inference is at odds with Elder's own description of what she told Lones and no other evidence bolsters the inference.[2] Therefore, the inference is not sustainable on the record before us. It simply does not follow from the delivery of keys, with the request that specific items be fetched, that one has necessarily been asked to care for a home, much less that one has become entitled to invite others into the home to search it.[3]

We are left with this result factually: The finding that Elder delivered her keys to Lones is supported by the evidence. The finding that Lones had authority to care for the home is not supported by any evidence and cannot be sustained as an inference flowing logically from the other findings. It is, therefore, clearly erroneous.

**1.** The trial court accepted that at some point Elder told Lones she was concerned defendant may be growing marijuana in her crawlspace. But nothing in the record indicates that Elder intended for Lones to act on her suspicions. To the contrary, the court found that Elder gave her house keys to Lones for the purpose of retrieving some of Elder's personal items. Elder also testified that she did not ask Lones to take the police into her home. We accordingly reject the State's argument that, in acquainting Lones with her concerns about defendant's marijuana cultivation, Elder meant to direct her daughter to investigate her suspicions and involve the police if they were substantiated. The court's findings do not allude to this theory. Furthermore, the theory is at odds with Elder's not giving Lones the keys to the crawlspace.

**2.** Such an inference might be sustainable if, for example, Elder had a practice of leaving her keys with Lones whenever she was away, with the expectation that Lones would water the plants, feed the cat, and bring in the mail. Against such a pattern, Elder's request that Lones get specified items for her when she gave her the keys might be taken as a request that Lones do that errand in addition to her usual responsibilities for the home, even if nothing specifically was said about that practice. There are no such indications in the record before us, nor would such facts necessarily suggest care for the home entailed involvement with the crawlspace, a difficult proposition since no key to that area was provided.

**3.** In *State v. Lovegren*, 798 P.2d 767 (Utah App. 1990), this court reemphasized the need for trial courts to disclose "the steps by which the ultimate conclusion on each factual issue was reached." *Id.* at 770 (quoting *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979)). *See also* Utah R.Crim.P. 12(c). In the present case, the trial court made no attempt to disclose how it formed the view that Lones had the run of the house and thereby had authority to consent to the search of the crawlspace.

■ Our inquiry thus turns to whether the conclusion of valid consent to the search of the crawlspace can be sustained on the strength of the finding that keys to other areas of the home were delivered to Lones. In undertaking such analysis, undisputed evidence of record may also be considered. *See State v. Lovegren,* 798 P.2d 767, 771 n. 10 (Utah App.1990).

The trial court inferred that since Lones had the keys to the living area of the home, she had authority to consent to a search of the home and crawlspace. However, Lones did not have the keys to the crawlspace and had to break through two dead-bolt locks to gain entry. Whatever authority over the house Lones had incident to retrieving items for her hospitalized mother, it certainly did not extend to kicking down doors to which she had no keys. If we follow the trial court's inference that possession of keys is tantamount to authority over those things which the keys unlock, even if the keys are tendered for a limited purpose, it would seem that the converse should likewise apply: Since Lones was not given a key to the crawlspace, she had no authority over the crawlspace.

Therefore, we hold that the trial court's findings, insofar as supported by the evidence, do not support its conclusion that Lones had authority to consent to a search of the crawlspace. Furthermore, since the material facts are undisputed, and since the record is sufficiently complete, there is no need for us to remand this issue for additional findings. *Id.* We are able to conclude on the record before us, as a matter of law, that Lones did not have authority to consent to a search of the crawlspace.

## APPARENT AUTHORITY

■ The State raises its apparent authority argument in reliance on a recent Supreme Court decision, handed down after the motion to suppress evidence was decided in the instant case. *Illinois v. Rodriguez,* —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).[4] In *Rodriguez,* the police conducted a search, reasonably but erroneously believing that a third person had authority to consent to the search. The Supreme Court held that since the police reasonably believed the third person had authority to consent to the search, the search did not violate the Fourth Amendment's protection against unreasonable searches and seizures. *Id.* 110 S.Ct. at 2801.

■ Applying this holding to the present case, the State claims the search of the crawlspace was legal because the police reasonably believed that Lones had authority to consent to the search even if she did not actually have such authority. Defendant contends, however, that the police could not reasonably have believed that Lones had authority to consent to a search of the crawlspace. We agree.

The officers who conducted the search knew these facts at the outset: (1) Lones did not live at the house, (2) both occupants of the house were absent, (3) Lones did not have a key to the crawlspace, and (4) Lones's husband had to kick the crawlspace door open to gain access to the crawlspace.

Confronted with these facts, it is not possible for the officers to have reasonably believed that Lones had authority to consent to the search. As a matter of law, such facts conclusively dispel whatever indicia of authority might have arisen from

4. *Rodriguez* having been decided after the suppression hearing, the issue is raised for the first time on appeal. The general rule is that an appellate court will not address an issue raised for the first time on appeal. *State v. Jameson,* 800 P.2d 798, 801 (Utah 1990). One exception, however, results from the rule that we may affirm trial court decisions on any proper ground, even though the trial court assigned another reason for its ruling. *See generally Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988) (appellate court may affirm for reason other than that given by trial court);

*State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986). Thus, if an argument made for the first time on appeal will result in *affirmance,* the argument will be considered. *Cf. Mel Trimble Real Estate v. Monte Vista Ranch,* 758 P.2d 451, 455–56 & n. 4 (Utah App.1988) (appellate court would not consider argument concerning judicial notice raised for first time on appeal "for the purpose of *reversing* the trial court" even though it might have done so "if doing so would permit *affirmance* "). We are asked to consider the apparent authority argument to see if denial of the motion to suppress can be sustained on this basis.

the mother-daughter relationship, the delivery of keys to other parts of the home, and a mother's expression of concern about marijuana being grown in the crawlspace by her son.

## CONCLUSION

■ Since Lones did not have actual authority to consent to the search, and since the officers could not reasonably have believed she had such authority, we reverse the denial of the motion to suppress evidence obtained from the crawlspace and remand the case for proceedings consistent with this opinion.[5]

BILLINGS, J., concurs.

RUSSON, Judge (concurring in the result):

I join the majority in reversing the trial court's denial of Elder's motion to suppress. However, given the majority's analytical approach in reaching the said result, I must concur in the result only.

The majority relies on *State v. Bobo*, 803 P.2d 1268 (Utah App.1990), and *State v. Vigil*, 164 Utah Adv.Rep. 28 (Utah App. 1991), for the proposition that consent is a legal conclusion which we review for correctness. Addressing the issue of consent, this court has recently held that such is a question of fact, to be reviewed under a "clearly erroneous" standard. *State v. Sterger*, 808 P.2d 122, 126 n. 5 (Utah App. 1991); *State v. Grovier*, 808 P.2d 133, 136 n. 1 (Utah App.1991); *but see State v. Carter*, 812 P.2d 460, 468 n. 8 (Utah App. 1991). In *Sterger* and *Grovier*, we expressly declined to follow the analytical approach taken in *Bobo*, which created a

two part analysis as to the issue of consent—first, a factual determination, and then a legal conclusion. *See Grovier*, 808 P.2d at 136 n. 1.

Nonetheless, I support the result reached by the majority in this case. Given the facts of this case—that Mrs. Elder gave Lones her house keys for the limited purpose of retrieving some personal items, that Mrs. Elder did not give Lones the keys to the crawlspace, that Mrs. Elder did not ask Lones to take the police into the home, and that Lones had to break through two dead bolt locks to gain entry to the crawlspace—I would hold that the ultimate finding of fact reached by the court below, the finding of valid consent to search of the crawlspace, was clearly erroneous.

Accordingly, because I disagree with the analysis used by the majority herein as to the issue of consent, I concur in the result only.

---

**5.** Although valid consent obviates the need for a warrant, our decision nonetheless promotes the maxim that warrants-when-practicable is the best policy. *See State v. Larocco*, 794 P.2d 460, 469 (Utah 1990). "[W]arrantless searches will be permitted only where they satisfy their traditional justification, namely, to protect the safety of police or the public or to prevent the destruction of evidence." *Id.* at 469–70.

Neither of these justifications existed in the case at hand. The officers knew that defendant would be out of town for a few more days and that there was, therefore, no danger of the evidence being destroyed or removed. Nor was

there any danger to the public or to the police officers. Indeed, the officers who initially arrived waited several hours for a narcotics officer to join them—time which could have been used to get a warrant.

At a minimum, the officers should have been concerned about the reality of Lones's authority, despite her claim, when confronted with the objective indicia that she had no such authority. Such doubts should have been resolved either by calling Elder or, preferably, by securing a warrant. The best advice remains: "When in doubt, get a warrant." *United States v. Gooch*, 603 F.2d 122, 126 n. 3 (10th Cir.1978).