**STATE of Utah, Appellee,**

v.

**Randy J. MONTOYA, Appellant.**

**No. 960227–CA**

Court of Appeals of Utah.

April 10, 1997.

Joan C. Watt, Salt Lake City, for Appellant.

Jan Graham, J. Kevin Murphy and Barnard N. Madsen, Salt Lake City, for Appellee.

Before DAVIS, GREENWOOD and ORME, JJ.

DAVIS, Presiding Judge:

Defendant Randy J. Montoya appeals the trial court's denial of his motion to suppress evidence on the grounds that the inventory search of the vehicle he was using was legally deficient and that the officers improperly interrogated defendant before any *Miranda*[1] warnings were given. We reverse.

## I. FACTS

We recite the facts in a light most favorable to the lower court's findings when reviewing its decision denying defendant's motion to suppress. *See State v. Anderson*, 910 P.2d 1229, 1230 (Utah 1996).

In the early morning hours of August 24, 1994, Officer Paul Gill of the West Valley Police Department was dispatched to a local convenience store. The store clerk had summoned the police to investigate an "individual out front bothering customers, walking around in his underwear." Officer Gill arrived at the store at approximately 3:00 a.m. and was closely followed by West Valley Police Officer James Schmidt.

The two officers discovered defendant standing next to a car in his "boxers." As the officers approached defendant, they observed him erratically pacing back and forth in front of the car, mumbling to himself, and exhibiting jerky body movements. Concerned about defendant's mannerisms, Officer Gill asked defendant if he was "on" anything. Defendant responded by stating that he had "had a few beers and had smoked a joint." As Officer Gill tried to converse with defendant, his condition progressively worsened. The officers noted that, in response to questions asked of him, defendant's answers were not in context, and defendant was inattentive and unfocused on what was transpiring.

Defendant was handcuffed and arrested for public intoxication. At that time, Officer Gill was concerned about defendant's deteriorating condition and summoned medical assistance.[2] Officer Gill also called West Valley Police Officer William McCarthy to the scene, who, according to Officer Gill, "was a little more educated on different types of effects of controlled substances or what might be going on with [defendant]."

When Officer McCarthy arrived, defendant was still handcuffed and standing by Officer Gill's patrol car. Officer McCarthy recognized defendant from prior encounters and approached him to determine whether he was all right. Officer McCarthy observed that defendant was foaming at the mouth, displaying jittery movements, had dilated pupils, and had marks on his arms indicating that he was injecting substances intravenously. Officer McCarthy immediately asked defendant whether he had done some "cheve," which, according to Officer McCarthy, is a street term for heroin.[3] Defendant responded in the affirmative.

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The request for an ambulance, however, was later canceled.

3. Officer McCarthy testified that his purpose in asking defendant whether he was under the influence of heroin was to ascertain whether defendant was going to be sick: "If they're going to be sick, as a courtesy to the jail as well as to the

After defendant was placed in the back of Officer Gill's police cruiser, Officer Gill decided to impound the vehicle and began an inventory search of the passenger compartment. Scattered on the floorboard were dollar bills, and a syringe and a spoon were located between the center console and the passenger seat. Meanwhile, Officer McCarthy and Officer Schmidt were inventorying the trunk of the vehicle and, after lifting the carpet covering the trunk space, discovered five balloons containing heroin.

Officer Gill ultimately located the name of the vehicle's owner. Because Officer McCarthy was familiar with the family who owned the car and as the senior officer on patrol that night, he "aborted" the impoundment of the vehicle and decided to release it to the owner.

Defendant was charged with unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8 (Supp.1995) (amended 1996).[4] Defendant filed a Motion to Suppress, seeking to suppress the discovered heroin on the ground that the officers failed to follow departmental policy regarding inventory searches and that the inventory search was therefore a pretext for an investigatory search for narcotics. Defendant also sought to suppress the statements made to both Officer Gill and Officer McCarthy on the ground that he was interrogated before *Miranda* warnings were given.

The trial court denied defendant's motion in both respects. Regarding defendant's pretextual inventory search claim, the trial court determined that it was necessary to impound the vehicle because it could not be left on the premises of the convenience store during the early morning hours and the ensuing inventory search of the vehicle's contents was therefore legitimate. With respect to defendant's allegation of the officers' failure to give any *Miranda* warnings, the trial court ruled,

> I am not persuaded that the fact or failure to Mirandize the defendant is a detriment to this defendant because I don't really see where the evidence has established anything that was of an incriminating nature after the time of the arrest prior to any Mirandizing being accomplished that would work to his detriment. Indeed, statements made, if there were, were in large part incomprehensible to the officers.

After the trial court denied defendant's motion, defendant entered a *Sery*[5] plea, reserving his right to appeal the trial court's denial of his motion.

## II. ISSUES AND STANDARD OF REVIEW

■ Defendant contends the trial court erred in denying his motion to suppress evidence, arguing that an invalid inventory search occurred and that defendant's statements were admitted in violation of *Miranda*. The State responds by conceding that it failed to establish that the inventory search was valid, primarily because it wholly failed to demonstrate that the police department had standardized inventory procedures and what those procedures were.[6] *See generally State v. Strickling*, 844 P.2d 979 (Utah.Ct.App.1992). Nonetheless, the State argues that the search should be upheld because it was a search incident to a lawful arrest, and once the officers searched the passenger compartment of the vehicle and discovered the spoon and the syringe, they then had probable cause to conduct a thorough search of the vehicle.[7] Such an argument was not

---

individual, it's nice to let them know we're bringing somebody in that's under the influence."

4. Defendant was also charged with unlawful possession of drug paraphernalia, *see* Utah Code Ann. § 58–37a–5 (1996), and public intoxication, *see* Utah Code Ann. § 76–9–701 (Supp.1996). However, these charges were later dismissed.

5. *See State v. Sery*, 758 P.2d 935 (Utah.Ct.App. 1988).

6. Because the State conceded at oral argument that the inventory search was not shown to be lawful, we do not address the issue further.

7. The State also claims that the search was imperative because the officers were extremely concerned about defendant's deteriorating condition and needed to find whatever drug defendant had ingested so they could inform the medical personnel who had been summoned. Supplemental authority was submitted by the State to support this contention. We find the State's argument

made to the trial court and the police all testified to conducting an inventory search—none spoke of any other basis for searching the vehicle.

 The factual findings underlying the trial court's decision will not be disturbed unless we find them to be clearly erroneous. *See Anderson*, 910 P.2d at 1232. "[C]lear error exists only if the factual findings made by the trial court are not adequately supported by the record." *Id.* The trial court's conclusions of law will be accorded no deference, but reviewed for correctness. *See State v. Gray*, 851 P.2d 1217, 1220 (Utah.Ct. App.1993).

## III. ANALYSIS

### A. Search of Vehicle

 The State argues this court should conclude that the warrantless search of the vehicle was valid because the search was conducted incident to a lawful arrest and probable cause coupled with exigent circumstances existed. " 'Warrantless searches are per se unreasonable unless undertaken pur-·suant to a recognized exception to the warrant requirement.' " *State v. Wells*, 928 P.2d 386, 389 (Utah.Ct.App.1996) (quoting *State v. Brown*, 853 P.2d 851, 855 (Utah 1992)). Additionally, "[t]he State must demonstrate 'that the circumstances of the seizure constitute an exception to the warrant requirement.' " *Id.* (quoting *Strickling*, 844 P.2d at 985).

 Although the State's arguments regarding search-incident-to-arrest and probable-cause-with-exigent-circumstances were not raised before the trial court, the State requests that this court utilize the judicially created doctrine of affirming the trial court's ruling on other proper grounds, even if raised for the first time on appeal. While the State claims that the " 'affirm on any proper ground' principle is a settled principle of appellate review," the Utah Supreme Court has recently stated that the "previous opinions on that question have been somewhat inconsistent," *State v. South*, 924 P.2d

354, 355 n. 3 (Utah 1996) (citing inconsistent cases).

The State is correct in its assertion that we may affirm the trial court's ruling on any proper ground as long as there is evidence in the record supporting such an affirmance. This principle was first articulated in *Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 461 P.2d 290 (1969). There the court stated,

> "The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court."

*Id.*, 461 P.2d at 293 n. 2 (quoting 5 C.J.S. *Appeal & Error* § 1464(1)). The court noted, however, that there is a significant difference between affirming on appeal and reversing: "[T]he appellate court will *affirm* a judgment on grounds not urged below, but will not *reverse* the lower court on *errors* claimed for the first time on appeal." *Id.*

 Critical to affirmance is the requirement that the ground or theory be "apparent on the record." *Id.* If, in any way, the ground or theory urged for the first time on appeal is not *apparent* on the record, the principle of affirming on any proper ground has no application. To hold otherwise would invite the prevailing party to selectively focus on issues below, the effect of which is holding back issues that the opposition had neither notice of nor an opportunity to address. Because of this due process component, "apparent on the record," in this context, means more than mere assumption or absence of evidence contrary to the "new" ground or theory. The record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordi-

---

meritless, however, considering Officer McCarthy's testimony that after defendant told him what he had been using, his primary concern

was whether defendant was going to be sick at the jail and considering the fact that the ambulance was called off.

nary intelligence on notice that the prevailing party may rely thereon on appeal.

In addition, the appellee still has the burden of thoroughly briefing an issue, however recently it was raised. Under Rule 24(a)(9) of the Utah Rules of Appellate Procedure, which is applicable to an appellee through Rule 24(b), an appellee must provide an argument "contain[ing] the contentions and reasons of the [appellee] with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." When an appellee fails to comply with this rule, we will decline to address the issue because the " 'reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988) (citation omitted); *accord Burns v. Summerhays,* 927 P.2d 197, 199 (Utah.Ct.App.1996) (" 'This court has routinely declined to consider arguments which are not adequately briefed on appeal.' " (quoting *State v. Yates,* 834 P.2d 599, 602 (Utah.Ct.App.1992))).

A well-briefed argument is most essential for an issue raised by an appellee for the first time on appeal because the new issue has not been addressed by the parties below and thus record support for the unaddressed argument is critical. Additionally, " '[i]f the court is not supplied with the proper tools to decide cases, then extremely valuable time, already severely rationed, must be diverted from substantive work' into less productive tasks." *Demetropoulos v. Vreeken,* 754 P.2d 960, 961 (Utah.Ct.App.1988) (citation omitted); *accord Burns,* 927 P.2d at 199.

Applying the above principles to the case at bar, we decline to address the State's arguments that the passenger compartment was properly searched incident to defendant's arrest and its related argument that the vehicle was properly searched based on probable cause and exigent circumstances.

Regarding the incident-to-arrest argument, although the State discusses the fact that defendant was appropriately arrested and that defendant had been a recent occupant of the vehicle—two issues which were undisputed by the parties—the State wholly fails to discuss an essential element of the search-incident-to-arrest doctrine: whether the search was done contemporaneous with the arrest. *See State v. Moreno,* 910 P.2d 1245, 1247 (Utah.Ct.App.), *cert. denied,* 916 P.2d 909 (Utah 1996). Even if the record supported this factor, with no citation thereto or discussion regarding the matter, the State has failed to meet its briefing burden. We therefore do not affirm the trial court's ruling on this ground.

We further find the State's probable cause and exigent circumstances argument meritless in light of the fact that the officers initially impounded the vehicle, thereby obviating any exigent circumstances created by the mobility of the vehicle. In addition, but for the initial search now characterized as ·incident to arrest, evidence said to provide probable cause for the more thorough search would not have been found and the search would be without probable cause. Accordingly, we decline to affirm the trial court's ruling on this ground as well.

### B. *Miranda* Violation

Defendant moved to suppress the statement to Officer McCarthy that he was "doing some cheve" on the ground that the officers failed to give *Miranda* warnings before Officer McCarthy began questioning defendant. The trial court denied defendant's motion,[8] ruling that no incriminating statements were given after defendant was taken into custody. The State concedes that the trial court's ruling was erroneous and does not challenge the trial court's determination that the officers failed to "Mirandize" defendant. The State agrees that "normally, [defendant's] admission would have been suppressed under the *Miranda* rule." The State contends, however, that defendant's re-

---

8. Defendant had also sought to suppress his statement to Officer Gill that he had smoked some marijuana. He does not, however, challenge on appeal the trial court's refusal to suppress this statement.

sponse was admissible under the "public safety" exception to *Miranda,* citing *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). Thus, the only issue on appeal is whether the public safety exception to the *Miranda* requirement applies to the facts of this case.

In *Quarles,* a woman approached two police officers and informed them that she had just been raped by a man carrying a gun. She described the man and told the officers she had seen him enter a nearby supermarket. *See id.* at 651–52, 104 S.Ct. at 2629. The officers entered the store and quickly located the defendant who, after noticing the officers, began fleeing to the rear of the store. *See id.* at 652, 104 S.Ct. at 2629. One of the officers apprehended the defendant and immediately frisked him. *See id.* The officer found an empty gun holster on defendant and, after handcuffing him, asked the defendant where he had hidden the gun. *See id.* The defendant "nodded in the direction of some empty cartons and responded, 'the gun is over there.'" *Id.* The officer retrieved the gun and then read the defendant his *Miranda* rights. *See id.*

In later criminal proceedings, the defendant sought to suppress the statement, "the gun is over there," on the premise that it was obtained before *Miranda* warnings were given. *See id.* at 652–53, 104 S.Ct. at 2629. The trial court suppressed the statement, ruling that it was obtained in violation of *Miranda. See id.* After several state court appeals affirming the trial court's ruling, the case was heard by the United States Supreme Court.

The Court reversed the lower courts' rulings and created a "public safety" exception to the *Miranda* requirement. *See id.* at 655, 104 S.Ct. at 2631. The Supreme Court "conclude[d] that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amend-

ment's privilege against self-incrimination." *Id.* Because the police officer in *Quarles* had "every reason to believe" that the defendant had disposed of the gun in the supermarket and this fact "obviously posed [a] . . . danger to the public safety," 467 U.S. at 657, 104 S.Ct. at 2632, the Court held that the statement elicited from the defendant was admissible even though it was given before the defendant was read any *Miranda* rights, *see id.* at 659, 104 S.Ct. at 2633.

The State argues that the public safety exception enunciated in *Quarles* applies here because "a real threat to *Montoya's* safety was present." (Emphasis added.) The State misconstrues the scope of *Quarles's* holding and its argument is therefore flawed. In *Quarles,* the Court was concerned about the safety of the general public, not the safety of a particular defendant. Here, there was no showing that there was any danger of imminent harm to the public at large. The State's attempt to expand the "narrow exception" devised in *Quarles* to a situation in which a defendant's personal safety may be at risk goes far beyond the underlying purpose of the public safety exception to the *Miranda* rule, and we decline to so extend the exception.[9] Accordingly, because the State concedes that absent the public safety exception, defendant's statement to Officer McCarthy should have been suppressed, we reverse the trial court's ruling denying defendant's motion to suppress this statement and hold that the statement be excluded in any further proceedings.

## CONCLUSION

We reverse the trial court's ruling that the inventory search was valid based on the State's well-taken concession at oral argument that the evidence supporting an inventory search was legally insufficient. We also decline to reach the State's search-incident-to-arrest argument because the State has

9. The State cites *State v. Franks,* 119 N.M. 174, 889 P.2d 209 (Ct.App.1994) to support its argument that the public safety exception applies to protecting a defendant from himself. However, the court in *Franks* clearly stated, "We begin our analysis by emphasizing that this is not a case that comes under *Miranda*." *Id.,* 889 P.2d at

213. Accordingly, *Franks* is inapplicable here. Similarly, the community caretaker doctrine articulated in *Provo City v. Warden,* 844 P.2d 360 (Utah.Ct.App.1992), is inapplicable to the facts of this case since the *Miranda* warnings could have been given well prior to questioning defendant about his use of heroin.

failed to meet its briefing duty under the Utah Rules of Appellate Procedure. We find the State's probable cause and exigent circumstances claim meritless. Consequently, the trial court's denial of defendant's motion to suppress the heroin is reversed. We also reverse the trial court's denial of defendant's motion to suppress the statement given to Officer McCarthy because the public safety exception to *Miranda* does not apply.

This case is remanded for proceedings consistent with this opinion.

GREENWOOD and ORME, JJ., concur.