2000 Utah Ct. App. 006

**STATE of Utah, Plaintiff and Appellee,**

v.

**William Joseph CHEVRE, Defendant and Appellant.**

**No. 981375–CA.**

Court of Appeals of Utah.

Jan. 21, 2000.

Jim R. Scarth and Harold J. Dent, Scarth & Dent, St. George, for Appellant.

Jan Graham, Attorney General, and Joanne C. Slotnik, Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, DAVIS, and JACKSON, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant William Chevre appeals his conviction, based upon a conditional plea of guilty, for one count of possession of a controlled substance. He asserts that evidence found as a result of the stop and search of his tractor-trailer should have been suppressed as a violation of the Fourth Amendment. *See* U.S. Const. amend. IV. We affirm.

## BACKGROUND

¶ 2 A Utah Highway Patrol trooper was patrolling near Kanab when Chevre and a passenger passed him driving a tractor-trailer truck in the opposite direction. The trooper reversed direction and followed the truck, with the intention of pulling it over to check the log book. Before initiating a stop, and while looking for a suitable place to do so, the trooper noticed that the truck's left rear brake light was not functioning. The trooper then stopped the truck to inform Chevre of the malfunctioning brake light and to check his log book.

¶ 3 When the trooper asked Chevre questions about where he was going, where he had been, and what he was hauling, Chevre's answers were unresponsive—"quite broken." The trooper characterized Chevre's behavior as "strange" and "spacey." The trooper observed that Chevre's left arm was limp, and that he seemed to have a physical defect of some sort. The trooper also noticed that Chevre was extremely nervous: his mouth and lips were dry, and his foot "was virtually bouncin' off the floor." The trooper asked Chevre out of the truck to show him the malfunctioning brake light and a leaking oil seal he had later noticed. After pointing out the equipment malfunctions, the pair walked back to the trooper's vehicle to review the log book.

¶ 4 Due to Chevre's "inability to carry on a good conversation," "inconsistent answers on his whereabouts," and his "very nervous condition," the trooper suspected that Chevre may have been operating the truck while under the influence of a controlled substance. The trooper administered a drug recognition evaluation, consisting of eight field tests. Taking into account Chevre's apparent physical disability, the trooper observed that Chevre had difficulty with five of the tests. Based on those results, the trooper deter-

mined that Chevre was under the influence of a central nervous system stimulant and arrested him for driving while under the influence of a controlled substance.

¶ 5 After arresting Chevre, the trooper returned to the truck to look for stimulants and to conduct an inventory search because the truck was to be impounded. Upon entering the cab of the truck, the trooper opened the curtains to the sleeper area to ensure that nobody else was inside. The trooper saw "some large things underneath some blankets and to make sure they weren't people, [he] uncovered them." Underneath, the trooper found bundles, wrapped in contact paper, the shape of miniature hay bales. Assuming, based on his training, that the packaging contained marijuana, he tore back a corner of a bundle and discovered a green leafy substance. The trooper then went to the rear of the truck where the passenger was waiting, and placed him under arrest. Upon completing the search, the trooper discovered a total of thirty-three bales of marijuana, weighing approximately 350 pounds.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 The issues presented for review in this appeal are whether the trial court properly determined: (1) that the stop of Chevre's truck was justified; (2) that the trooper properly extended the scope of the stop beyond its original purpose; and (3) that the search of the sleeper area of Chevre's truck did not violate the Fourth Amendment.

¶ 7 "The factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence are reviewed under the deferential clearly-erroneous standard, and the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Moreno*, 910 P.2d 1245, 1247 (Utah Ct.App.1996).

## ANALYSIS

### 1. The Stop

¶ 8 Chevre argues that although he committed a traffic violation (the defective brake light) before the trooper stopped him,

the stop was not justified because the trooper formed the intent to stop him before witnessing the violation. We disagree. "[A] police officer is constitutionally justified in stopping a vehicle if the stop is 'incident to a traffic violation committed in the officers' presence.'" *State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) (quoting *State v. Talbot*, 792 P.2d 489, 491 (Utah Ct.App.1990)). "[A]s long as an officer suspects that the 'driver is violating any one of the multitude of applicable traffic and equipment regulations,' the police officer may legally stop the vehicle." *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979)); *see also State v. Spurgeon*, 904 P.2d 220, 225 (Utah Ct.App.1995) (providing that equipment violations are traffic violations justifying investigative stop by law enforcement). This is true regardless of whether the traffic violation is a pretext for what otherwise may be a stop due to an *"unconstitutional motivation."* *Lopez*, 873 P.2d at 1135 (emphasis in original).

¶ 9 In this case, the trooper initially intended to stop Chevre to check his log book. However, we need not determine the validity of such a stop because before the trooper initiated the stop, he noticed the defective brake light. The defective brake light led the trooper to conclude that Chevre had violated an equipment regulation, *see* Utah Code Ann. §§ 41–6–120, –121.10 (1998), which justified the stop. *See Lopez*, 873 P.2d at 1132; *see also State v. Marshall*, 791 P.2d 880, 883 (Utah Ct.App.1990) ("Courts consistently have held that a police officer can stop a vehicle when he or she believes the vehicle's safety equipment is not functioning properly."). Therefore, the trial court correctly concluded that the trooper's intention of stopping the truck to check the log book before witnessing the defective brake light did "not adversely affect the legitimacy of the stop."

### 2. The Scope of the Stop

¶ 10 Chevre next argues that the trooper unlawfully detained him after pointing out the defective brake light. We again disagree. "Once a traffic stop is made, the detention 'must be temporary and last no

longer than is necessary to effectuate the purpose of the stop.'" *Lopez*, 873 P.2d at 1132 (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)). If there is investigative questioning that detains the driver beyond the scope of the initial stop, it "must be supported by reasonable suspicion of more serious criminal activity. Reasonable suspicion means suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *Id.* If the officer reasonably suspects more serious criminal activity, "the scope of the stop is still limited." *Id.* The officer must "diligently pursue[ ] a means of investigation that [is] likely to confirm or dispel [his or her] suspicions quickly, during which time it [is] necessary to detain the defendant." *State v. Grovier*, 808 P.2d 133, 136 (Utah Ct.App.1991).

¶ 11 Because the trooper's initial stop of Chevre was proper, we must now ascertain "whether [the trooper's] subsequent detention and questioning of [Chevre] ... was justified because [the trooper] had a reasonable suspicion to believe [Chevre] was engaged in a more serious crime." *Marshall*, 791 P.2d at 884. The characteristics Chevre displayed, especially his incoherent responses to the trooper's questions and extreme nervousness (to the point that he was unable to control his bouncing foot), led the trooper to reasonably suspect that Chevre was engaged in the more serious criminal activity of driving while under the influence of a controlled substance. The trooper was then justified in extending the scope of the stop beyond the defective brake light in order to quickly confirm or dispel his suspicion. *See Grovier*, 808 P.2d at 136. By giving Chevre a drug recognition evaluation at the scene of the stop, the trooper "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly." *Id.* Therefore, the trial court correctly concluded that the trooper was "justified in having Chevre perform the drug recognition tests," and extending the scope of the stop.

### 3. The Search

¶ 12 Finally, Chevre argues that the trial court erred in determining that the search of his truck was constitutional. *See* U.S. Const. amend. IV. The trial court concluded that it was reasonable for the trooper to "perform an inventory search of the [truck]." However, appellate courts "can affirm the trial court on any proper legal ground." *State v. Hansen*, 837 P.2d 987, 988 (Utah Ct.App.1992). To do so, the legal ground must be "apparent on the record" and sufficiently briefed by the appellee. *State v. Montoya*, 937 P.2d 145, 149–50 (Utah Ct.App.1997).

¶ 13 The State asserts that the decision allowing the search can be most easily affirmed as a search incident to arrest. That ground was "apparent on the record" because the record here contained "sufficient and uncontroverted evidence supporting the [search incident to arrest] to place [Chevre] on notice that the [State] may rely thereon on appeal." *Id.* The State also briefed the alternative ground of search incident to arrest. Therefore, we need not determine whether the search can be upheld as a valid inventory search if we can affirm on the alternative ground of search incident to arrest.

¶ 14 "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Additionally, "the police may also examine the contents of any containers found within the passenger compartment...." *Id.*

¶ 15 Here, Chevre's arrest was lawful because the trooper had probable cause to believe that Chevre was driving while under the influence of a controlled substance when he showed significant difficulty with five of the eight field tests. Additionally, the search was contemporaneous because it occurred immediately after the trooper arrested Chevre, and before the passenger was arrested. Therefore, we need only determine whether the sleeper area of the truck can properly be considered part of the passenger compartment, and thus, within the bounds of a search incident to arrest.

¶ 16 Courts have generally "defined what constitutes the passenger compartment of an automobile to include any area 'generally reachable without exiting the vehicle, without regard to the likelihood in a particular case that such a reaching was possible.'" *U.S. v. Olguin–Rivera,* 168 F.3d 1203, 1205 (10th Cir.1999) (quoting *United States v. Doward,* 41 F.3d 789, 794 (1st Cir.1994), *cert. denied,* 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995)); *see also State v. Johnson,* 77 Wash.App. 441, 892 P.2d 106, 109 (1995), *aff'd,* 128 Wash.2d 431, 909 P.2d 293 (1996). In *Olguin–Rivera,* the defendant was arrested and the officers searched the covered interior cargo area of his sport utility vehicle. *See* 168 F.3d at 1203. The court determined that for purposes of a search incident to arrest, when dealing with a vehicle with no trunk, such as a sport utility vehicle, the entire inside of the vehicle constitutes the passenger compartment and may be lawfully searched. *See id.* at 1205. To hold otherwise would "effectively allow[ ] the occupants of sport utility vehicles or other similar automobiles to transform a cargo area into the functional equivalent of a trunk simply by covering the area." *Id.* Closely analogous to our case is *Johnson,* 892 P.2d 106. There, the Washington court determined that the sleeper area of a tractor trailer, accessible without exiting the truck cab, is considered part of the passenger compartment and subject to a search incident to arrest. *See id.* at 109.

¶ 17 The evidence in this case shows that the sleeper area was accessible without exiting the truck cab. In fact, the sleeper area was separated from the driver area by only a curtain. Occupants of the driver area could access the sleeper area simply by reaching through the curtain. Consequently, in accordance with the purpose of a search incident to arrest, limiting the search to the "area within the arrestee's immediate control" so as to prevent the arrestee from getting weapons, or destroying or concealing evidence, *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the sleeper area of the truck in the instant case can properly be considered part of the passenger compartment. Moreover, because the sleeper area can be considered

part of the passenger compartment, the trooper could properly examine the contents of the bundles located therein during a search incident to arrest. *See Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. Therefore, the trial court did not err in holding that the search did not violate the Fourth Amendment.

### CONCLUSION

¶ 18 The stop of Chevre's truck was justified by the traffic violation. The trooper then properly extended the scope of the stop beyond the traffic violation because he reasonably suspected that Chevre was driving while under the influence of a controlled substance. The subsequent search of the passenger compartment of the truck was proper as a search incident to arrest and did not violate the Fourth Amendment.

¶ 19 Accordingly, we affirm Chevre's conviction.

¶ 20 I CONCUR: NORMAN H. JACKSON, Judge.

DAVIS, Judge (concurring in part and concurring in the result in part):

¶ 21 I agree with the majority's analysis in this case, except as to Part 3, in which I concur only in the result.

¶ 22 The majority correctly relies upon *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* and *State v. Moreno,* 910 P.2d 1245 (Utah Ct. App.1996), foreclose any argument that under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the arrestee must be in close physical proximity to the vehicle at the time of the search. *See State v. Giron,* 943 P.2d 1114, 1118 (Utah Ct.App. 1997) (holding that "a search conducted of the arrestee's car is not too remote in place, or does not lack the requisite physical proximity to the arrest, even when the arrestee has been handcuffed and removed from the car"). Further, *Belton* adopted a so-called "workable rule" that the entire passenger compartment of a vehicle is considered within the arrestee's immediate control and thus

may be searched. *See Belton,* 453 U.S. at 460, 101 S.Ct. at 2864.

¶ 23 Nonetheless, I do not believe this court should perpetuate the fiction that the physical proximity requirements of *Chimel* continue to have any efficacy when the vehicle is searched after the arrest and when the arrestee no longer has control over or access to the vehicle. *See Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040 (holding that search of area around arrestee is reasonable only when there is a danger the arrestee could obtain a weapon or destroy evidence). Despite the Supreme Court's protestations in *Belton* that its holding "d[id] no more than determine the meaning of *Chimel*'s principles in this particular and problematic context [and] in no way alter[ed] the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests," *Belton,* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, as illustrated by this case, the exceptions have swallowed the physical proximity requirement of *Chimel. Belton, Moreno,* and their progeny modified *Chimel* when vehicle searches are concerned and we should stop pretending that *Chimel*'s "area within the arrestee's immediate control" has any further application in that context.