**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

MARIO OLGUIN-RIVERA;
RODOLFO ALVIDREZ-TERRAZAS,

    Defendants-Appellees.

No. 98-1164

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 98-CR-75-B)

---

Kathleen M. Tafoya (Henry L. Solano, United States Attorney, with her on the briefs), Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellant.

Miles A. Cabral (Al Cabral with him on the brief), and Edward A. Pluss, Denver, Colorado, for Defendants-Appellees.

---

Before **BRORBY, McWILLIAMS** and **KELLY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

    The United States Government brings this appeal challenging a district court order suppressing contraband evidence obtained in an automobile search.

The district court held that covering the cargo area of a sport utility vehicle creates the "functional equivalent" of a trunk and places the covered area beyond the permissible scope of an automobile search incident to arrest. We exercise jurisdiction pursuant to 18 U.S.C. § 3731 and reverse.

BACKGROUND

On February 7, 1998 at around 11:00 p.m., two Colorado State Troopers were parked in the median along Interstate 76 near Ft. Morgan, Colorado, on routine traffic patrol. The troopers observed a green Isuzu Rodeo sport utility vehicle pass by without a visible license plate on the back. Appellee, Mr. Rodolfo Alvidrez-Terrazas, was driving the vehicle, with co-Appellee, Mr. Mario Olguin-Rivera, riding in the back seat. The officers stopped the vehicle to check for a licensing violation. After approaching the vehicle for close inspection, the officers discovered an expired temporary license attached to the inside of the back window. At that point, the troopers instructed the driver, Mr. Alvidrez-Terrazas, to get out of the vehicle and present his driver's license. Because Mr. Alvidrez-Terrazas was unable to produce a license or any other form of identification, the troopers decided to arrest him. The troopers also asked the passenger Mr. Olguin-Rivera to exit the vehicle and produce his driver's license. Mr. Olguin-Rivera, who the troopers later discovered had legally rented the vehicle, showed the

troopers his license and then stood by as they began to search the vehicle.

The troopers started their search of the interior at the front of the passenger compartment and worked toward the back. Eventually, one of the troopers opened the tailgate to search the rear cargo area which had a built-in, vinyl cover pulled over the top. The trooper testified the vinyl cover operated much like a rolling window shade that could be extended over the top of cargo and then retracted when not in use. This particular cover was drawn from the front of the cargo area near the back of the passenger seat and latched at the back of the vehicle near the tailgate. After opening the tailgate, the troopers could see two large bags under the vinyl covering. Without touching or removing the bags, the troopers asked Mr. Olguin-Rivera who the bags belonged to and what they contained. After some discussion, Mr. Olguin-Rivera finally admitted the bags were his and that they contained marijuana. The troopers then arrested Mr. Olguin-Rivera and searched the bags which, contained a total of 118 pounds of marijuana.

Mr. Olguin-Rivera and Mr. Alvidrez-Terrazas were subsequently charged with one count of possession with intent to distribute marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. Both defendants filed similar motions to suppress the drug possession evidence claiming the troopers violated

their Fourth Amendment rights during the initial encounter. On April 16, 1998, the district court conducted a consolidated hearing, and after hearing testimony and arguments, the court ruled to suppress the evidence. The district court found the covering over the rear compartment of the sport utility vehicle created the "functional equivalent of the trunk of an automobile," and therefore caused the troopers' search to "exceed[] the proper scope" of an automobile search incident to arrest.

DISCUSSION

This appeal presents us squarely with the question whether placing a cover over the luggage or cargo area in a sport utility vehicle creates the functional equivalent of a trunk and renders the covered area beyond the permissible scope of an automobile search incident to arrest under the Fourth Amendment. In reviewing the district court's grant of a suppression motion, we accept the district court's factual findings absent clear error and review *de novo* the district court's determination of reasonableness under the Fourth Amendment to suppress the contraband evidence. *See United States v. Lacey*, 86 F.3d 956, 971 (10th Cir.), *cert. denied*, 117 S. Ct. 331 (1996); *United States v. Lugo*, 978 F.2d 631, 634 (10th Cir. 1992).

1.    Constitutional Framework

The Fourth Amendment generally prohibits law enforcement from conducting a search without a valid warrant supported by probable cause. *See National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989); *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). However, the Supreme Court subjects this general rule to a variety of exceptions in order to respond to situations where certain exigent circumstances make exemption from the warrant requirement a necessity. In *Chimel v. California*, 395 U.S. 752 (1969), for example, the Court established an exception to allow the contemporaneous search of a lawfully arrested person and the immediately surrounding area without a warrant in order to promote safety and prevent the concealment or destruction of evidence. *Id.* at 763-64. *Chimel* limited and defined the area of a permissible search incident to arrest to include "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Id.* at 763. Although *Chimel* stated a fairly clear rule for general custodial arrests, the courts found it difficult to apply a workable definition of the area subject to search in certain cases – especially when the area included the interior of an automobile.

In order to address this uncertainty and cure the disarray it caused in case law, the Supreme Court in *New York v. Belton,* 453 U.S. 454 (1981), established a

-5-

bright-line rule specific to automobile searches incident to arrest.  The Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "examine the contents of any containers found within the passenger compartment."  *Id.* at 460 (footnotes omitted); *see also United States v. Franco*, 981 F.2d 470, 472 (10th Cir. 1992).  The rule from *Belton* is based on the "generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon or [evidence]."  *Belton*, 453 U.S. at 460 (internal quotation marks and citation omitted).  Under this same rationale, the Court expressly noted the passenger compartment did not encompass the trunk of the automobile, leaving it beyond the scope of a permissible search incident to arrest.  *Id*. at 460 n.4.  The decision in *Belton* promoted both privacy and law enforcement interests by aiding the police in correctly determining beforehand "whether an invasion of privacy is justified in the interest of law enforcement."  *Id*. at 458 (internal quotation marks and citation omitted).  Later cases further defined what constitutes the passenger compartment of an automobile to include any area "generally reachable without exiting the vehicle, without regard to the likelihood in a particular case that such a reaching was possible."  *United States*

*v. Doward*, 41 F.3d 789, 794 (1st Cir. 1994) (internal quotation marks and citation omitted), *cert. denied*, 514 U.S. 1075 (1995).

2.    Application

The district court applied the rules from *Belton* and its progeny to invalidate the search in this instance because it determined any evidence or weapons contained in the covered cargo area of the vehicle were beyond the defendants' "reasonable ability to access," thereby making the covered cargo area more like a trunk than part of the passenger compartment.  However, we disagree with the court's conclusion and find "where, as here, the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and may be lawfully searched," *United States v. Henning*, 906 F.2d 1392, 1396 (10th Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991), regardless of the imposition of an easily-retractable vinyl covering or its ostensible effect on the defendants' ability to reach the area.  *Doward,* 41 F.3d at 794.

In arriving at our decision, we do not ignore the arguments of Mr. Olguin-Rivera and Mr. Alvidrez-Terrazas or the rationale of the district court.  We acknowledge this case presents a closer legal question than ones involving the uncovered hatchback area of a car or the luggage area of a station wagon or sport

utility vehicle generally. A long line of cases from this court and others has clearly established that police officers may search hatchback or cargo storage areas in vehicles without a "trunk" (in the traditional sense) as constituting part of the passenger compartment for purposes of search incident to arrest. [1] We find these cases equally persuasive and controlling in situations where the cargo area is covered. Consequently, in keeping with the principles these cases establish, we decline to validate a rule that effectively allows the occupants of sport utility vehicles or other similar automobiles to transform a cargo area into the functional equivalent of a trunk simply by covering the area. We find the extension of the built-in, vinyl cover over the top of the cargo area simply does not make it tantamount to a trunk for search and seizure purposes.

---

[1] *See Lacey*, 86 F.3d at 971 (upholding search of entire interior of a van); *Henning*, 906 F.2d at 1396 (validating search of entire interior area of a Suburban sport utility vehicle); *Doward*, 41 F.3d at 794 (finding the hatch area of a car "reachable without exiting the vehicle" and subject to search); *United States v. Rojo-Alvarez*, 944 F.2d 959, 970 (1st Cir.1991) (treating hatch area of a car as within defendant's reach and subject to search); *United States v. Pino*, 855 F.2d 357, 364 (6th Cir.1988) (upholding search of "the rear section of a mid-size station wagon"), *cert. denied*, 493 U.S. 1090 (1990); *United States v. Russell*, 670 F.2d 323, 327 (D.C. Cir.) (ruling a hatchback reachable without exiting the vehicle qualifies as part of the interior or passenger compartment subject to search), *cert. denied*, 457 U.S. 1108 (1982). These searches are justified primarily on the basis that the hatch area or cargo area is readily accessible to the occupants without exiting the vehicle.

Our decision rests on several factors. First, although we emphasize "reachability" is not itself dispositive, we find the cargo area of the vehicle in this case was accessible to the defendants. The district court found in its ruling that, although difficult to do, a passenger in the rear seat could reach the bags under the cover without exiting the vehicle. One of the troopers on the scene also testified that a person could climb through the whole vehicle, including the back cargo area. We find these facts sufficient to make the covered portion of the cargo area different than a trunk in the traditional sense. Trunks are inaccessible from the passenger compartment, whereas the cargo area in the vehicle in this case – whether covered or not – is still accessible to the vehicle's occupants.

Second, we rest our decision on principles of consistency. Under *Belton* we allow the officers to search containers within the passenger compartment of an automobile, 453 U.S. at 460, and we see no valid, rational means of distinguishing a container from a covered cargo area so as to permit the search of one and not the other. If, for example, we allow officers to search under blankets, in coats, and under pillows as part of ordinary automobile searches; we see no reason to indiscriminately draw an artificial distinction between those type of permissible searches and the covered cargo area in this case. The search of a closed container within the passenger compartment is so closely analogous to

looking under a covered area of the passenger compartment, we must treat them the same for purposes of search incident to arrest. Attempting to distinguish a container from the covered cargo area only takes us into the exception-riddled "gray area" we try to avoid when defining the lawful parameters of warrantless search and seizure.

Finally, and most importantly, sound policy compels us to adhere to a bright-line rule in this instance. *Belton* emphasized police officers "have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront," and consequently "the protection of the Fourth and Fourteenth Amendments can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement." *Id*. at 458 (internal quotation marks and citation omitted). Both law enforcement and private citizens benefit from clear rules in the context of search and seizure because it assures citizens of the exact bounds of their privacy rights and strictly defines the limits on law enforcement.

The basic problem with making a rule allowing the covering of the cargo

-10-

area to create the functional equivalent of a trunk is the path of uncertainty it leads us down. Such a rule requires the type of subtle, fine-line distinctions the Court disfavors, *see, e.g., Belton,* 453 U.S. at 458, and begs a multitude of questions. We want to avoid the sort of arbitrary, post hoc assessment and judicial second-guessing that results when uncertain standards exist to govern law enforcement activity. Therefore, we decide officers may search the entire passenger compartment, including the interior cargo or luggage area, of sport utility vehicles or similarly configured automobiles, whether covered or uncovered.

CONCLUSION

Accordingly, we **REVERSE** the order of the district court suppressing the contraband evidence.