**UNITED STATES of America,
Plaintiff,**

v.

**Donald Duane HALL, Defendants.**

**Criminal Action No. 08–cr–122–JLK.**

United States District Court,
D. Colorado.

March 12, 2009.

Wayne Campbell, U.S. Attorney's Office, Denver CO, for Plaintiff.

## ORDER ON MOTIONS TO SUPPRESS

KANE, District Judge.

This matter is before me on Defendant Donald Duane Hall's (1) Motion to Suppress Search (Doc. 101)(seeking to suppress evidence obtained in warrantless search of Hall's motorcycle saddlebag incident to his arrest); (2) Motion to Suppress Unlawfully Intercepted Aural, Electronic and Wire Communications (Doc. 110)(seeking suppression of all wiretap evidence); (3) Motion to Suppress Search (Residence) (Doc. 152) and (4) (Second) Motion to Suppress Search (Residence–February 2008) (Doc. 153)(challenging separate searches of Hall's residence). I GRANT the Motion related to the warrantless search of the motorcycle saddlebag, and DENY the other Motions.

### Warrantless Search of Motorcycle Saddlebag.

█ Defendant Hall was arrested at approximately 2:30 p.m. on May 14, 2008 after he exited a house trailer at 2233 East 8th Street, Lot 340, Pueblo, Colorado. Agents had an active arrest warrant and there is no dispute the arrest itself was legal. Immediately before the arrest, agents had observed Hall and a female companion leave another residence and travel on Hall's motorcycle to the house trailer. One officer, situated approximately 75 yards away, saw Hall near the saddle bag hanging over the rear tire of the motorcycle. At that distance he could not discern whether Hall opened the saddlebag, put something in or took something out. No officer in closer proximity testified to this saddlebag event. The officers watched the couple enter the house trailer. The couple remained inside for a period of time that has been estimated by various witnesses to range from five minutes to half an hour. The time spent inside is not critical to the issue presented on this Motion to Suppress.

Officers saw the couple leave the house trailer and as Hall was approaching the motorcycle he was placed under arrest. From a conflict in the testimony, I find that Hall was much more than an arm's length distance from the motorcycle. Following the arrest and placing Hall in custody, the officers conducted a search of the motorcycle. The saddlebag was closed and fastened with a strap. The saddlebag was opened and in it was found approximately 100 grams of methamphetamine in three baggies, a 22 caliber Lorcin handgun and $6,000 cash. The question presented is whether the search of the motorcycle and saddlebag was incident to the arrest and thus did not require a warrant. I find it was not, and therefore the search was unreasonable as a matter of law.

█ The Fourth Amendment generally prohibits law enforcement from conducting a search without a valid warrant supported by probable cause. *U.S. v. Olguin–Rivera*, 168 F.3d 1203, 1204–1205 (10th Cir.1999)(citing *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989)

and *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). The Supreme Court, however, subjects this general rule to a variety of exceptions in order to respond to situations where certain exigent circumstances make exemption from the warrant requirement a necessity.[1] In *Chimel v. California,* 395 U.S. 752, 763–64, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), for example, the Court established an exception to allow the contemporaneous search of a lawfully arrested person and the immediately surrounding area without a warrant in order to promote safety and prevent the concealment or destruction of evidence. *Chimel,* and *Chimel's* further refinement into what is known as the "automobile exception" to the Fourth Amendment's warrant requirement, form the basis for the government's premise of entitlement to the warrantless search of Hall's motorcycle saddlebag. The government bears the burden of proving that an exception to the warrant requirement applies. *U.S. v. Edwards,* 242 F.3d 928, 937 (10th Cir.2001).

*Chimel* limited and defined the area of a permissible warrantless search incident to arrest to include "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." 395 U.S. at 763, 89 S.Ct. 2034. Although *Chimel* stated a fairly clear rule for general custodial arrests, the courts found it difficult to apply a workable definition of "the area" subject to search in certain cases—

especially when the area included the interior of an automobile. *Olguin–Rivera* at 1205. To address this uncertainty and cure the disarray it caused in case law, the Supreme Court in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), established a bright-line rule specific to automobile searches incident to arrest. "When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "examine the contents of any containers found within the passenger compartment." *Id.* at 460, 101 S.Ct. 2860. *See also United States v. Franco,* 981 F.2d 470, 472 (10th Cir.1992). The rule from *Belton* is based on the "generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon or [evidence]." *Belton* at 460, 101 S.Ct. 2860. Under this same rationale, the Court expressly noted the passenger compartment did not encompass the trunk of the automobile, leaving it beyond the scope of a permissible search incident to arrest. *Id.* at 460 n. 4, 101 S.Ct. 2860.

The decision in *Belton* promoted both privacy and law enforcement interests by aiding the police in correctly determining beforehand "whether an invasion of priva-

---

1. A search is usually per se unreasonable unless it is conducted pursuant to a warrant. *See Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *Coolidge v. New Hampshire,* 403 U.S. 443, 474, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Warrantless searches, however, may be reasonable pursuant "to a few specifically established and well-delineated exceptions," *Katz,* 389 U.S. at 357, 88 S.Ct. 507, such as when the search is consented to, *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111

S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991), when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable,' " *Griffin,* 483 U.S. at 873, 107 S.Ct. 3164 (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J. concurring)), or when those who seek exemption from the constitutional mandate demonstrate that "the exigencies of the situation made that course imperative." *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

cy is justified in the interest of law enforcement." *Olguin–Rivera* at 1205 (quoting *Belton* at 458, 101 S.Ct. 2860). Later cases further defined what constitutes the passenger compartment of an automobile to include any area "generally reachable without exiting the vehicle, without regard to the likelihood in a particular case that such a reaching was possible." *Id.* (quoting *United States v. Doward*, 41 F.3d 789, 794 (1st Cir.1994) (internal quotation marks and citation omitted), *cert. denied*, 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995)).

Even assuming, for the sake of argument, that Hall had been arrested immediately after dismounting his motorcycle, I would decline in this case to extend the *Belton* automobile exception to the search of his saddlebag. While it is true that in the case of a motorcycle nearly all of the exterior portion can be considered in plain view and capable of being in the "immediate control" of an arrestee, the belted saddlebag is more akin to the trunk of a car in that the temporal and spatial relationship to the arrestee negates such control. Based on my findings, moreover, that Hall had gone inside the trailer after dismounting his motorcycle and was not within arm's reach of the saddlebag at the time he came out of the trailer and was arrested, the justifications for the *Belton* exception are simply not at issue. Hall's arrest could be and was made with due regard for the safety of the officers, the protection of the evidence and the prevention of flight by Hall. There was no exigency and time was affordable so as to permit the officers to obtain a warrant to search the saddlebag in accordance with Fourth Amendment requirements.

Because the government has failed to prove that an exception to the warrant requirement was justified with respect to the search of the motorcycle saddlebag at issue, I conclude the search was unreasonable and violative of Defendant's Fourth Amendment rights. Accordingly, the fruits of that unconstitutional search, i.e., the handgun and the $6,000 in cash, will be suppressed and may not be received into evidence at trial.

### The Remaining Motions to Suppress— Wiretap Evidence and Residence Search.

The remaining Motions seek suppression of evidence gathered pursuant to facially valid search warrants on grounds the warrants were not supported by probable cause. I deny the Motions.

#### Wiretap Evidence (Doc. 110).

Federal investigatory wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–22. Section 2518 sets forth the requirements for issuance of a wiretap warrant. In particular, the government must submit a written application to the issuing judge laying out, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(1)(c). This provision is called the "necessity requirement." *U.S. v. Verdin–Garcia*, 516 F.3d 884, 889–890 (10th Cir.2008)(citing *United States v. Green*, 175 F.3d 822, 828 (10th Cir.1999)). "The purpose of this requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Id.* (citation omitted). Traditional investigative techniques generally include: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants; and (5) the

use of pen registers and trap-and-trace devices." *Id.* at 890. *See Ramirez–Encarnacion,* 291 F.3d at 1222 n. 2 (10th Cir.2002).

The necessity requirement is not to be treated hypertechnically and does not mandate exhaustion of all possibilities. *Verdin–Garcia* at 890. It is "met if the government demonstrates either [that] normal investigatory techniques have been tried and failed or that they 'reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try.' " *Id.* (citing *U.S. v. Ramirez,* 479 F.3d 1229, 1240 (10th Cir.2007)) (quoting *United States v. Castillo–Garcia,* 117 F.3d 1179, 1187 (10th Cir. 1997)). The government is expected to act "in a common sense fashion," and on review courts consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap." *Ramirez–Encarnacion,* 291 F.3d at 1222 (internal quotation marks omitted). The overall burden on the government "is not great." *Id.*

 Once a wiretap has been authorized by a judge, it is presumed proper and the burden is on the defendant to prove its invalidity. *United States v. Radcliff,* 331 F.3d 1153, 1160 (10th Cir.2003). A district court reviewing another district court's issuance of a wiretap order examines *de novo* whether the government submitted a full and complete statement of necessity as required, and then reviews for abuse of discretion the district court's conclusion that the wiretap was necessary. *United States v. Merton,* 274 F.Supp.2d 1156, 1167 (D.Colo.2003)(Daniel, J.)(applying *Ramirez–Encarnacion* at 1222 & n. 1). Based on the latter standard, the reviewing court thus confines itself to the information as it existed before the issuing judge. *Id.*

The wiretap authorization at issue on Hall's Motion in this case was the second of two wiretap authorizations directed at a group of suspected methamphetamine conspirators that included Hall. Hall contends the application and supporting affidavit failed to demonstrate sufficient "necessity" for the second wiretap because the government did not wait long enough between wiretaps to allow the first, together with the ongoing traditional investigatory techniques, to work before seeking the second. Under the applicable standards articulated above, I reject the assertion. The agent's affidavit in support of the second wiretap was sufficiently specific and complete with regard to the need for the additional wiretap to survive *de novo* review, and Hall has failed to demonstrate Judge Babcock's finding of necessity was an abuse of discretion.

The affidavit supporting the second wiretap application provides a "full and complete statement" of necessity meeting the requirements of § 2518(1)(c) and is not limited to so-called boilerplate generalizations. For example, the testifying agent at paragraph 93 of the affidavit specifies that Ellena Lopez was using a police scanner to monitor police broadcasts. The agent also asserts confidential sources were unable to identify "Lalo," Ellena's methamphetamine source. The agent states attempts were made to interview Lisa Marie Hernandez, but that Ellena and "Lalo" questioned her about the contacts, putting the entire investigation at risk. Perhaps one of these, standing alone, would not be sufficient to produce probable cause, but *in toto* they do.

It is important to note that in construing the law informing the extent of law enforcement's reach into our private lives under the Fourth Amendment, most of the cases on which Hall relies took place in an era when cell phones were not ubiquitous. The basic law is that applications for wiretaps are to be considered in light of com-

mon sense and practical need. Hall argues, quite forcefully, for an exhaustion requirement before a wiretap may be authorized: If traditional techniques are advancing the investigation, there is no need to intrude on a citizen's expectation of privacy in his telephone conversations. I find this argument anachronistic and not in keeping with the thrust or purpose of the law.

First, the argument is contrary to established law. There is no exhaustion requirement to a finding of necessity in the sense of having to refrain from wiretaps as long as some other method of detection is working. Indeed, once probable cause is established, it is expected that every useful method will be coordinated: Surveillance will continue, undercover police agents will continue to infiltrate, confidential informants will continue to inform, controlled purchases will be made, and perhaps trash bin collections will be used and eventually presentment to the grand jury will be made.

Second, the argument is outdated. In this regard, it is important to observe that the main object of the Fourth Amendment is to protect people in their homes. From this, areas of privacy outside the home—e.g., the office, the automobile, the hotel room, luggage, and wearing apparel—ensue so as to keep the government out of our personal lives. Random searches or pervasive invasions such as indiscriminate monitoring by intelligence services are clearly prohibited, but once a showing is made to an independent magistrate or judge that there is indeed probable cause to believe criminal activity is afoot, then the intrusion on a discrete basis into individual privacy is permitted. The requirement of minimalization measures underscores the continuing duty to respect legitimate privacy interests.

Given the mobility and proliferation of cellular telephones, cases involving land lines, fixed in areas of privacy such as the home or office, are less apposite than they were ten, even five, years ago. Cellphone technology is essentially "new" technology entirely, having expanded to include text messaging, global positioning services, and internet connectivity. Cellphone use occurs on the streets, in public places such as restaurants and theaters with a nearly ubiquitous indifference to traditional privacy interests. The use means there is less to surveil and fewer in-person meetings for undercover agents or confidential informants to attend. Reminiscent of the infamous bank robber, Willie Sutton's, reply when asked why he robbed banks ("[b]ecause that's where the money is"), the business of illegal drug commerce is conducted on cellphones. Wiretaps are essential to probe that illicit business and identify those who are involved in or behind the transactions.

Thus, the independent magistrate or judge must look to specific data such as pen registers and trap and trace devices—which simply identify the volume of calls and the numbers called—surveillance reports, undercover police activity, controlled purchases, and intelligence evaluations of information received from informants, in order to make certain that the invasion of privacy interests occasioned by tapping telephonic communications is discrete and purposeful. In this case, Judge Babcock was presented with ample specific information to justify the issuance of the second wiretap authorization order. Statements of opinion and generality in the affidavit provided orientation to the investigation at issue, and did not substitute for specificity. So-called "boilerplate" may be regarded as background, but the central statements focused on specific facts giving rise to probable cause. The finding of necessity in this case was not an abuse of discretion.

*Searches of Hall's Residence (Docs. 152 & 153).*

I am unpersuaded by Hall's challenges to the warrants underlying the February 2008 (Doc. 153) and December 2006 (Doc. 152) searches of his residence at 2321 Pine Street in Pueblo, Colorado. The affidavit supporting the warrant for February 2008 was premised on contemporaneous confidential informant statements, surveillance, GPS and wiretap interceptions more than sufficient to establish probable cause for the search. *See* Govt.'s Ex. 4 (Doc. 157–5). The assertion that the wiretap interceptions were unlawfully obtained pursuant to an invalid authorization, has already been rejected and forms no independent basis for challenging the February 2008 search warrant.

The challenge to the earlier (2006 or 2007) search of Hall's residence (Doc. 152) is vague and appears to be the subject of motions in a pending state court case in Pueblo. No specific evidence is identified in Hall's Motion that he seeks to suppress and the Motion is denied without further comment.

Based on the foregoing findings and analysis, the pending Motions in this case are resolved as follows:

1. The Motion to Suppress Search (Doc. 101), seeking to suppress evidence obtained in the warrantless search of Hall's motorcycle saddlebag incident to his arrest, is GRANTED;

2. The Motion to Suppress Unlawfully Intercepted Aural, Electronic and Wire Communications (Doc. 110), seeking the suppression of all wiretap evidence obtained in the wiretap requested on February 11, 2008 and authorized by Judge Babcock is DENIED;

3. The Motion to Suppress Search (Residence) (Doc. 152) is DENIED; and

4. The Motion to Suppress Search (Residence–February 2008) (Doc. 153) is also DENIED.